UNITED STATES (ARMSTRONG v.). See Cases Nos. 548 and 549.

## Case No. 14,469.

UNITED STATES v. ARNOLD et al.

[1 Gall. 348.] [1]

Circuit Court, D. Rhode Island.   Nov. Term, 1812.

STATUTES — TIME OF TAKING EFFECT — CUSTOMS DUTIES—ARRIVAL AND ENTRY—BONDS.

1. The act of 1st of July, 1812, c. 112 [2 Stat. 768], laying double duties, took effect on that

[1] [Reported by John Gallison, Esq.]

day; and all vessels arriving at their port of entry and discharge on that day, were liable to pay the duties, although they had actually arrived before within the jurisdictional limits of the United States.

[Cited in U. S. v. Lyman, Case No. 15,647; The Gertrude, Id. 5,370; Smith v. Draper, Id. 13,037; Waring v. Mobile, 8 Wall. (75 U. S.) 120.]

2. Judgment on a bond cannot exceed the penalty thereof and interest from the breach, although the sum actually be larger.

[Cited in Lawrence v. U. S., Case No. 8,145.]

[Cited in Clark v. Wilkinson, 59 Wis. 553, 18 N. W. 485. Distinguished in Fraser v. Little, 13 Mich. 202. Cited in Hood v. Hayward, 124 N. Y. 24, 26 N. E. 338; Judge of Probate v. Heydock, 8 N. H. 494; Lyon v. Clark, 8 N. Y. 156; Mower v. Kip, 6 Paige, 93; Murray v. Porter, 26 Neb. 295, 41 N. W. 1113; New Holland Turnpike Co. v. Lancaster Co., 71 Pa. St. 445; Perry v. Horn, 22 W. Va. 385; Williams v. President, etc., of American Bank, 4 Metc. (Mass.) 322; Wyman v. Robinson, 73 Me. 389.]

This was an action of debt on a bond for the payment of duties. The defendants pleaded as follows:

"Rhode Island District ss.—Circuit Court, November Term, 1812. Case—United States v. Samuel G. Arnold et al.

"And the defendants come into court and defend the wrong and injury, when, &c. and crave oyer of the bond or writing obligatory set forth in the plaintiff's declaration, reserving to themselves the liberty of all further pleadings, in abatement or in bar, or otherwise, on oyer thereof.

"By Their Attorney—Nathaniel Searle, Jun.

"Which is granted; and having oyer of said bond, they crave oyer of the condition thereof.

"By Their Attorney—Nathaniel Searle, Jun.

"And having oyer of said bond, and of the condition thereof, which are read to them in the words and figures following, viz.:

" 'Know all men by these presents, that we, Samuel G. Arnold, Joseph S. Martin, merchants, and Richard Fenner, mariner, all of the town and county of Providence, in the state of Rhode Island, &c. are held and firmly bound unto the United States of America, in the sum of three thousand four hundred dollars, to be paid to the United States: for payment whereof, we bind ourselves, our heirs, executors and administrators firmly by these presents. Sealed with our seals, dated this 2d day of July, in the thirty-sixth year of the independence of the United States, and in the year of our Lord one thousand eight hundred and twelve.—The condition of this obligation is such, that if the above bounden S. G. Arnold, J. S. Martin, and R. Fenner, or either of them, or either of their heirs, executors or administrators shall and do, on or before the 2d day of October next, well and truly pay, or cause to be paid unto the collector of the customs for the district of Providence, for the time being, the sum of seventeen hundred dollars, or the amount of duties to be ascertained as due, and arising on certain goods, wares and merchandize, entered by the above bounden S. G. Arnold, as imported in the brig Dover, R. Fenner master, from Havana, as per entry dated this day, then the above obligation to be void, otherwise to remain in full force and virtue. Samuel G. Arnold. (L. S.) Joseph S. Martin. (L. S.) Richard Fenner. (L. S.) Sealed and delivered in presence of Thomas Peckham, Jun.

" ' 'Amount of duties ascertained as due, seventeen hundred and eight dollars and thirty-eight cents. Thomas Peckham, Jun. Deputy Collector.'

"The defendants further defend and say, that as to seventeen hundred and eight dollars and thirty-eight cents, part and parcel of said sum of three thousand four hundred dollars, demanded by the plaintiffs in their declaration, together with the interest thereon, from the day whereon the same was payable up to the present day, being thirteen dollars and thirty-eight cents, the defendants say, that true it is, they owe to the plaintiffs the said sum of seventeen hundred and eight dollars and thirty-eight cents, and also said sum of $13.38 cents, thirteen dollars and thirty-eight cents being the interest thereof, and in the whole amounting to the sum of seventeen hundred and twenty-one dollars and seventy-six cents; and that as to the whole residue of the sum demanded by the plaintiffs, in their said declaration as aforesaid, the defendants say, that therefor the plaintiffs their said action ought not to have and maintain; because they say, that the said brig Dover, in the condition of said bond mentioned, sailed from Havana in the said condition mentioned, on the 16th day of June, A. D. 1812, having on board the said goods, wares and merchandize mentioned in the condition aforesaid of said bond: which said goods, wares and merchandize were imported into the said United States, on the said 30th day of June, 1812, and into the said district of Providence, on the said 1st day of July, 1812, in the said brig Dover, as aforesaid, on her voyage aforesaid. That Providence is the only port of entry in the said district of Providence, and that on the 2d day of July, A. D. 1812, the said goods, wares and merchandize were duly entered at the custom-house in said district of Providence, as imported in said brig Dover as aforesaid, and as stated in said condition of said bond. And the defendants further aver, that the bond aforesaid was made, executed, and given by them to the plaintiffs, as aforesaid, for securing the duties due on the said goods, wares and merchandize, imported as aforesaid, in conformity with, and by virtue and in pursuance of the act of the congress of the United States, passed on the 10th day of August, A. D. 1790 [1 Stat. 180], entitled, 'An act making further provision for the payment of the debts of the United States.' and also of a certain other act of congress, passed on the 7th day of June, 1794 [1 Stat. 390], entitled, 'An act laying additional duties on goods, wares and merchandize imported into the United States.' And

the defendants further aver, that the duties due by the acts aforesaid, on the importation of said goods, wares and merchandize, in manner as aforesaid, amounted at the time of the importation of the same, as aforesaid, to the aforesaid sum of seventeen hundred and eight dollars and thirty-eight cents, and no more, and were then and there ascertained by the said deputy collector to amount to that sum and no more, according to the condition of said bond, and in pursuance of the provisions of said statute. And the defendants further aver, that at the time of the entering of said goods, wares and merchandize, at the custom-house as aforesaid, on said 2d day of July, 1812, neither they, the defendants, nor either of them. nor the collector of the customs for said district of Providence, had any knowledge of the passing of the act 'for imposing additional duties upon all goods, wares and merchandize imported from any foreign port or place, and for other purposes,' passed on the 1st day of July, 1812; nor was the said last mentioned act promulgated, published, and made known at the district of Providence, as aforesaid, at the time of making said entry as aforesaid. And this the defendants are ready to verify. Wherefore they pray judgment, if the plaintiffs their said action shall have and maintain, for any greater sum than the said sum of seventeen hundred and twenty-one dollars and seventy-six cents, and their cost.

"By Their Attorney—Nathaniel Searle, Jun."

To this plea there was a demurrer and joinder.

The real question raised at the argument was, whether the single duties or double duties, under the act of the 1st of July, 1812, c. 112, were recoverable on the bond.

Mr. Howell, U. S. Dist. Atty.

I contend that the act of the 1st July, 1812, c. 112, took effect at the time of its passage, according to the terms of the act, and was binding upon all parties without promulgation. This was a mere fiscal regulation, and differs from cases of penalties or offences, which perhaps may receive a different consideration. If the act took effect on the 1st of July, as in law there are no fractions of a day, it took effect during the whole of that day. The importation however was not complete until the 2d of July, when the vessel was entered at the custom-house. Until that time, the duties did not accrue, and therefore the double duties are payable. The revenue laws allow a credit from the time of the entry, and so is the custom-house practice. But even admitting that the importation took place on the 1st of July, on the arrival at Providence, yet the double duties are payable on all importations on that day.

Tristram Burgess and Mr. Searle, for defendants.

This is a contract made between the United States and the defendants, as to the pay-

ment of duties. The plea alleges that the duties to be secured, were duties payable under the statutes of 1790 and 1794, not under the statute of 1st of July, 1812. c. 112. The demurrer admits the allegations of the plea, and it is not competent for the United States to deny the fact. If this be true, then the United States can recover no more under their contract, than what it was designed to secure. A statute cannot take effect until it has been promulgated. It must be known before it can have operation. It would be highly unjust, and against the prohibition of the constitution of the United States as to ex post facto laws, to allow the retrospective operation now contended for. At any event, the act did not take effect until the 2d of July. "From and after the date" excludes the day of the date; and "from and after the passage" excludes the day of the passage of a law. The importation took place immediately on the arrival of the vessel within the limits of the United States. The words of the act are, "imported into the United States;" not "imported into any port of the United States." The word "imported" is equivalent to "brought into"

(STORY, Circuit Justice. The decision in U. S. v. Vowell, 5 Cranch [9 U. S.] 368, is against this construction. There must be an arrival at the port of entry, to make the right to duties attach. An importation has, in many cases, been held to mean, "a voluntary bringing into port of goods, with an intent to land or discharge them there." So is the construction of the revenue statutes of Great Britain.)

If an arrival into the United States be not of itself an importation, it is an inchoate act of importation; and after the arrival of the vessel at the port of entry, it has a retroactive effect, so as to make the importation complete from the first arrival. But the importation, at all events, was complete on the 1st of July. An entry at the custom-house is not necessary to an importation; on the contrary, it presupposes a previous importation. The whole revenue laws show that the importation is considered as complete, independent of the entry. There are three stages in the transaction: First, an importation; secondly, a report at the custom-house; and thirdly, an entry of the goods. Duties accrue upon the importation, not on the entry. Act 1799, § 36 [1 Stat. 655].

(STORY, Circuit Justice. You need not labor this point; I have no doubt that an importation may be complete, without an entry.)

The case [U. S. v. Vowell] 5 Cranch [9 U. S.] 368, is distinguishable. In that case the act was repealed at the time when the bond was given. The bond was therefore illegal and void. The decision was right, but the

reasons of the court were not, in our judgment, correct. The plea expressly avers that the goods were imported on the 30th of June, 1812, and the demurrer admits the facts. The United States cannot now say that the importation was at a subsequent period.

Mr. Howell, in reply.

The demurrer admits no facts, which are not well pleaded. The whole facts must be taken together; and if so, then the importation was not complete until the 1st of July. The case in 5 Cranch [9 U. S.] is decisive. No parol averments can be admitted to narrow the terms of the condition of the bond. All duties which were payable were secured by it.

STORY, Circuit Justice. This is an action of debt, brought by the United States, on a custom-house bond given by the defendants, on the 2d day of July, 1812, to secure the amount of the duties to be ascertained as due and arising on certain goods, wares, and merchandizes, entered at Providence on the same day, as imported in the brig Dover from Havana. After oyer of the bond and the condition thereof (which are in the usual form), the defendants pleaded a special plea, which I need not literally state. It admits in substance, that single duties are due, to wit, $1708.38 cts. with interest from the day of payment to the day of the plea, to wit $13.38 cts. and unpaid on the bond aforesaid: and as to the residue of the penalty of the bond, alleges, that the brig sailed from the Havana, with said goods, &c. on board, on the 16th day of June, 1812, bound for the district of Providence; that she arrived with said goods, &c. within the United States, on the 30th day of June, 1812, and within the district of Providence, on the 1st day of July, 1812; that the same goods were imported into the United States on the said 30th day of June, and into the said district of Providence, on the said 1st day of July; that Providence is the only port of entry in said district, and that at that port the goods, &c. were duly entered, on the said 2d day of July. The plea then avers, that the duties intended to be secured by said bond were the duties imposed by the act of 10th of August, 1790, c. 39; and the act of 7th of June, 1794, c. 54; which amounted to a sum stated in the plea. That at the time of the entry, as aforesaid, neither the defendants nor the collector of the customs at Providence had any knowledge of the passing of the act of 1st of July, 1812, c. 112, laying double duties; and that at the same time the same act had not been promulgated or published at Providence. The United States have demurred to the plea, and its sufficiency is now in issue before the court.

I have no difficulty in deciding that the plea is bad in substance. It admits the cause of action, and does not avoid it: and

it is quite impossible to contend, that it can be a good bar, when from the defendants' own showing, the bond has not been satisfied or discharged. If a single dollar only were due and unpaid to the United States, the bar would be insufficient. But as the questions, which were raised on the argument, must meet the court in another shape before the final decision of the cause, and have been very fully argued, I am willing to pronounce the opinion, which I have formed after much deliberation.

In the first place, it is contended, that the act of the 1st of July, 1812, which declares, "that an additional duty of 100 per cent. upon the permanent duties now imposed by law, &c. shall be levied and collected upon all goods, wares and merchandize, which shall, from and after the passing of this act, be imported into the United States, from any foreign port or place," did not take effect on the day of its passage, nor indeed until it was formally promulgated and published. From the language of the act it is clear, that the legislature did intend that it should operate from its passage; and when the legislature has so declared its will, unless it be unconstitutional, I know of no authority in judicial courts to set aside its solemn mandates. It is a general rule, that where any period or term of time is to begin to run from and after the doing of any act, it includes the day on which such act is done. The passing of this statute was on the 1st of July, and it begins to have operation, therefore, on that day; and for purposes of this nature the law does not allow any fractions of a day. Nor can such a legislative provision be considered as an ex post facto act, within the prohibitions of the constitution. Admitting that clause to apply to civil actions and rights, and to fiscal regulations, which has been doubted; still it can never be construed to prevent the legislature from giving effect to its acts immediately after their passage. It being then competent for the legislature to enact such a provision, the arguments as to the inconvenience or hardship of the case are not properly addressed to a judicial tribunal; they belong to another forum, which is the exclusive depository of legislative power. There is therefore an end of this question upon the manifest declaration of the legislature. In cases where a statute contains within itself no declaration as to the time when it shall begin to operate, it has been contended that it takes effect only from the time of its promulgation; and consequently, that it cannot affect a citizen until he has had actual or constructive knowledge thereof: actual knowledge by reading, hearing, or personal examination; constructive knowledge by the lapse of such a reasonable time from promulgation, as affords a presumption of knowledge. But it is very clear, that at common law no such promulgation is necessary; and the consequence would oth-

erwise be, that a law would exist and operate upon one part of the community, which as to other parts would be a dead letter. In the case of U. S. v. The Ann [Case No. 14,456]. Isaac Tenny, claimant, in Massachusetts, this question came successively before the district and circuit courts; and both courts, on very full consideration, held, that where no other time is mentioned in a statute, it takes effect from its passage, and binds all the citizens, without promulgation; and that the consequences (which, to be sure, might in many instances prove highly unjust) were very proper for legislative, but, ought not to affect judicial tribunals. The rule was considered as an inveterate rule of the common law. See Latless v. Holmes, 4 Term R. 660; 4 Inst. 25; Attorney General v. Panter, 6 Brown, Parl. Cas. 486. Nay, the common law extended the principle still further, by referring the passage to the first day of the session of parliament, on the fiction that the whole session was but a single day.

It is further argued that here there was an actual importation into the United States before the 1st of July. That the importation was either complete by arrival within the jurisdictional limits of the United States, or if inchoate only, upon the subsequent arrival at the port of discharge, there was a retro-active operation, which made the importation consummate from the first arrival. I know of no such retro-active effect as is here contended for. The duties were payable on importation, and not before; and the importation must therefore be complete before the right to the duties would attach. It might as well be contended, that from the moment that the goods were put on board at the Havana, there was an inchoate act of importation. The question, therefore, resolves itself into this: Did a mere arrival within the jurisdictional limits of the United States, and without the limits of the district or port of destination, constitute an importation into the United States, within the words of the statute? I am well satisfied, that an importation, within the meaning of the statute, must be an importation into some port or district of the United States, with intent there to discharge or land the cargo. It is not a bare arrival, even within a port, which would constitute an importation; it must be a voluntary arrival. If driven in by necessity or stress of weather, or unavoidable accident, it has been frequently held, that the goods were not to be considered as imported. On the other hand; if there be a voluntary entry into port, with an intent to land the goods, it has been held that the importation was complete, although, within forty-eight hours, a new destination was given to the property. The whole provisions in the collection act evidently proceed upon the position, which I have assumed; and if it needed support, I think it is completely corroborated in the decision of the supreme court of the United States, in U. S. v. Vowell, 5 Cranch [9 U. S.] 368. The court there in effect held, that in order to fix a cargo with duties, it should not only be brought into the collection district, but within the port of entry; and that the duties did not accrue until the vessel arrived at the port of entry. And the court, in the same case, adopted the construction of the treasury department as sound law, that additional duties, imposed by the legislature, are payable on a cargo, although it may have arrived within the collection district before the passing of the act, if it do not arrive at a port of entry until after that time. That is precisely the present question. I am satisfied, therefore, that the argument of the defendants, on this second question, ought not to prevail.

After my decision as to the unsoundness of the plea, it may not be necessary to notice some objections, which have been started, on the ground that the demurrer admits all the facts in that plea; and the court are bound by that admission. I would observe however, that a demurrer admits only such facts as are well pleaded, and never admits the law arising on those facts. The court is bound to take notice of all public laws. The condition of the bond is for the payment of all duties due by law; and if double duties are payable by law, the mere allegation that single duties only are payable under the statutes of 1790, and 1794, cannot be admitted by the court to destroy the proper conclusion of law. Such an averment is properly matter of law, and not of fact; and a demurrer may well be for a false allegation of the law. As little will the allegation avail, that the parties meant to secure the duties accruing only under the statutes previous to the 1st of July. The condition of the bond is broad enough to cover all duties payable, and no parol averment is admissible to control or narrow the legal construction of the words of the condition. If it were otherwise, a mere mistake of the parties would not prejudice them. If on the one hand, no duties, or less duties had been payable, the defendants would have been entitled to the benefit: and by the same reason they will now be held to the payment of of the double duties. The penalty of the bond however is less than the double duties, and unless the court can award damages beyond the amount of the penalty, the United States cannot in this suit recover the whole money due to them. Notwithstanding some contrariety in the books, I think the true principle supported by the better authorities is, that the court cannot go beyond the penalty and interest thereon from the time it becomes due by the breach. See Londsdale v. Church, 2 Term R. 388; Wilde v. Clarkson, 6 Term R. 303; McClure v. Dunkin, 1 East, 436; Hefford v. Alger, 1 Taunt. 218. I adjudge the bar bad, and order judgment for the United States in the penalty

of the bond and interest from the time it became payable. Bar adjudged bad.

Affirmed on appeal. 9 Cranch [13 U. S.] 104.