RANDLE v. BARNARD.

(Circuit Court, E. D. Missouri, E. D. February 1, 1900.)

No. 4,095.

1. ACTION ON BOND—PLEADING—AVAILABLE DEFENSE.

In an action against the surety on a bond for the performance of a contract to rent, and pay for the lease of, a hotel, which was to be ready for occupation by a certain date, defendant denied that his principal failed to pay, and alleged that there was nothing due; that plaintiff failed to complete and furnish the building by the time fixed by the contract, and that, without defendant's knowledge or consent, plaintiff's time for completion was extended; and that plaintiff wholly failed to keep his agreement. *Held* not to warrant the defense that when the lease was executed it was agreed, contrary to the original contract, that lessee should furnish the building, and defendant should allow him a certain sum therefor, to be paid in monthly installments in advance, or that, according to the original agreement, no sublease was to be executed, and that the lease, as executed, gave the lessee the unrestricted privilege of subletting the basement.

2. SAME—ANSWER—PRESENTATION OF ISSUE—SUFFICIENCY.

In an action against a surety on a bond for the performance of a contract to rent, and to pay for the lease of, a hotel, an averment in the answer that plaintiff wholly failed to comply with the contract, and wholly failed to keep stipulations agreed to, is not sufficiently specific to present an issue of fact.

3. SAME.

Where a surety for the performance of a contract relies in defense on the obligee's changes in the contract, made by the parties thereto without his knowledge or consent, he should distinctly plead the covenants of the original contract which were changed.

4. SAME—WHAT INTEREST RECOVERABLE.

Apart from statute, it seems that interest might be recovered on the damages resulting from a breach of the bond, from the date of the breach to the date of the judgment, even if the same exceeds the penalty of the

bond; but where the statute of the state in which the bond was executed and delivered, as construed by the supreme court of such state, forbids a recovery of such interest, such statute and construction thereof will be followed by the federal courts.

McKeighan, Barclay & Watts and A. W. Hope, for plaintiff.
Geo. W. Taussig, for defendant.

ADAMS, District Judge. This is an action counting on a bond, in the penal sum of $5,000, executed October 29, 1892, by the defendant as surety for one A. C. Ricksecker, the principal in the bond. The petition shows that the condition of the bond is for the faithful performance of the covenants of a certain contract, of even date with the bond, executed by and between the plaintiff and Ricksecker; and, by way of alleging a breach, the plaintiff avers that in and by the contract the principal agreed, among other things, to rent a certain building, situate in the city of Chicago, from the plaintiff for a period of 183 days, commencing on the 1st day of May, 1893, and to pay plaintiff therefor, as rent, the sum of $140 for each and every day during the term, in monthly installments in advance, on the first business day of each calendar month during said term, and that Ricksecker failed to pay the rent so agreed to be paid by him, in a sum largely in excess of the penalty of the bond. The answer of the defendant admits the execution of the bond, subject to the condition already stated; admits that, among other things, the contract referred to in the bond required Ricksecker to pay rent for the building as alleged in the petition; denies that Ricksecker failed to pay the rent, and alleges that there was nothing due to plaintiff from him on account of rent at the time this suit was instituted; and, by way of affirmative defense, the defendant pleads, in substance, as follows: That, according to the terms of the contract referred to in the bond, the plaintiff agreed to build and complete the building there provided for on or before the 1st day of May, 1893, in accordance with certain plans and specifications which were made part of the contract; that said building, when completed, was to contain 140 rooms, to be furnished by the plaintiff with good and substantial bedroom furniture, and made fit for occupancy of guests, on or before the 1st day of May, 1893; that plaintiff did not build, complete, and equip the building on or before the 1st day of May, 1893, as required by the contract, in this: that he did not on or before that date furnish said rooms with good and substantial bedroom furniture, and did not, prior to that date, make the rooms fit for occupancy of guests. And, further answering, the said defendant alleges as follows:

"That after the execution of said contract of October 29, 1892, between the said Randle and said Ricksecker, the said Randle and Ricksecker, without the knowledge or consent of this defendant, did vary and change the said contract, in this: that the said Ricksecker and Randle did agree that the said building, to be erected, built, and completed, according to the said contract, on or before the 1st day of May, 1893, should be erected, built, and completed on a day subsequent to said May 1, 1893, and that said Ricksecker and said Randle did, after the execution of said bond of defendant, and without the consent of defendant, agree to change said contract of October 29, 1892, so that the said Randle should not be obliged to furnish each of said rooms with good and sub-

stantial plain furniture, as bedrooms, and make the same fit for occupancy of guests, on or before the 1st day of May, 1893, and did agree that in lieu therefor said Randle would furnish said rooms, and make the same fit for occupancy of guests, on a day subsequent to the said 1st day of May, 1893, all without the consent of this defendant. Defendant, further answering, states that the plaintiff wholly failed to comply with the agreement entered into by him (plaintiff) on October 29, 1892, with said Ricksecker, and that the said Randle wholly failed to keep each and every agreement by him stipulated to be kept by said contract."

The reply is a general denial.

I have stated the substance of the pleadings in this case because of the argument of counsel for the defendant, in his brief, in which he contends that by the original agreement, pursuant to which the bond was given, Randle was to furnish the chamber service for the hotel, and that when the lease was finally executed, on May 11, 1893, it was agreed that Ricksecker should actually furnish the service, and that the plaintiff should allow him, for supplying the same, $1,000, to be paid at the rate of $166.66 per month in advance. It is also claimed in argument that according to the original agreement no sublease was to be made by Ricksecker without Randle's consent, but that the lease, as executed on May 11th, conferred upon Ricksecker unrestricted privilege to sublet the basement for restaurant purposes. I am of opinion that, under the pleadings in this case, no such defenses are available to the defendant. The court's attention was not called to any such pretended defense during the trial, and I was not aware that any such claim would be made until I examined the briefs of counsel for the defendant preparatory to deciding this case. If such claim had been made at the time of the hearing, I should not have hesitated to rule it out, and to exclude any evidence concerning it under the pleadings as they stand. The clause found at the end of the answer of the defendant, already quoted, to the effect that plaintiff wholly failed to comply with the agreement entered into by him on October 29, 1892, and that the plaintiff wholly failed to keep each and every agreement by him stipulated to be kept in said contract, is not sufficiently specific to present an issue of fact. In cases like this it is incumbent upon the defendant to distinctly plead the covenants of the original contract which were changed by the principal and obligee in the bond, upon which the surety relies as a defense. The sole issue of fact, therefore, for trial in this case is whether there was an extension of time given by Ricksecker to the plaintiff to finish the building which Ricksecker was about to rent, and whether such agreement was known and consented to by the defendant surety. The original agreement of October 29, 1892, required the plaintiff to complete the building in question on or before May 1, 1893, and required Ricksecker to lease the same and pay the stipulated rent therefor; and each of the parties to the agreement were required, by its terms and provisions, to execute a bond conditioned for the faithful performance by them of their respective obligations. There is no doubt that plaintiff failed to have the building completed and ready for occupancy in accordance with the covenants of the contract, and there is no doubt that Ricksecker,

after being made aware of the fact that the plaintiff could not fully complete the building by May 1st, came to an understanding with the plaintiff with respect thereto, and claimed damages as a result thereof, and adjusted such damages with the plaintiff. In other words, Ricksecker, instead of rescinding the contract, or refusing to perform by reason of plaintiff's breach, waived his right to do so, and sought his remedy in the assertion of a claim for damages against the plaintiff by reason of his breach, and settled such claim by accepting, in full thereof, $2,170, or one-half a month's rent. The plaintiff earnestly contends that such action by Ricksecker, taken under circumstances like those already disclosed, whereby the possibility of breaches by either side was contemplated, and surety required of and given by them, respectively, for the faithful performance of their covenant obligations, does not constitute such a change or variation of the contract as to discharge the surety, even if he did not consent specifically thereto at the time it was made. But I do not deem it necessary to rest the decision of this case on the soundness of this proposition alone. This view has much support in the case of Rice v. Filene, 6 Allen, 230. But, whether tenable or not, and whether applicable to this case, as already stated, I do not deem it necessary to decide.

An issue of fact is raised by the pleadings, touching the surety's actual knowledge of, and consent to, the adjustment made between Ricksecker and the plaintiff. In determining this issue, I have taken into consideration the evidence showing the relations of Ricksecker and ·defendant, Barnard, at the time the original contract and bond were executed. It appears that by an instrument bearing even date with the bond in suit, executed by Ricksecker and the defendant, they agreed as follows:

"I, A. C. Ricksecker, for and in consideration of Geo. D. Barnard's signing a five thousand dollar bond in favor of C. H. Randle, and the advancing of five hundred dollars in money as called for by me, do hereby agree to pay Geo. D. Barnard, of St. Louis, Missouri, the $500.00 advanced by him to me, and twenty-five per cent. of all the net profits arising from the leasing of a certain property to be erected on Fortieth street, about three hundred feet west of Cottage Grove avenue, in the city of Chicago, Cook county, and state of Illinois, to be erected by Mr. C. H. Randle, and under contract of lease to the said A. C. Ricksecker, which contract of lease is hereby referred to, and made a part of this contract. The said A. C. Ricksecker further agrees to pay to the said Geo. D. Barnard fifteen per cent. of the net profits on all other deals to be made by the said A. C. Ricksecker in the city of Chicago, and which he is enabled to make because of the signing of the aforesaid $5,000 bond, and advancement of the $500 in money. The said A. C. Ricksecker hereby agrees to submit all trades or deals made by him to the said Geo. D. Barnard for his approval. In witness whereof, we have hereunto set our hands and seals this 29th day of October, 1892

"[Signed]          A. C. Ricksecker.    [L. S.]
                 "Geo. D. Barnard.     [L. S.]"

The foregoing agreement relates primarily to the particular business project of securing the building involved in this case, and while, as has been held, this contract does not create a relation of partnership between the parties (Randle v. Barnard, 26 C. C. A. 568, 81 Fed. 682), it nevertheless throws some light on the question sharply at issue in the case now before the court. The defendant, it ap-

pears, had an important interest in the result of Ricksecker's venture. It is clear from the evidence that about the 1st of May, 1893, when it became apparent that plaintiff would not be able to complete the building within the stipulated time, Ricksecker entered into an active correspondence with the defendant, and continued it from that time until the 11th day of May, when the adjustment was reached between Ricksecker and the plaintiff. So Ricksecker and Barnard both testify. Much of this correspondence was not produced at the trial, and the court is compelled to consider the inherent probabilities, and rely largely upon the evidence of Mr. Barnard and Mr. Ricksecker with respect to its contents. After giving these things a careful consideration, I cannot resist the conviction that Ricksecker fully informed Barnard concerning the situation, and his negotiations with the plaintiff in adjusting the claim for damages by reason of the delay in completing the building, and that Barnard fully advised Ricksecker in relation to the same. How, in the nature of things, could it be otherwise? Barnard was largely interested in the venture, and had at the outset exacted a promise from Ricksecker to make no trades without his approval. What was this active correspondence at this particular juncture about? No occasion for it, other than the exigency of the building venture, is attempted to be shown by defendant. It seems to me so extremely reasonable, under the circumstances, that Ricksecker should have consulted Barnard, and secured his approval of the adjustment in question, that scarcely anything less than the production of the correspondence and a clear demonstration should suffice to establish the contrary. Instead of this, the proof shows that the defendant, in the midst of the correspondence, directs Ricksecker to follow an attorney's advice. Not only so, but the testimony of the defendant and Ricksecker, in my opinion, when considered as a whole, shows that Barnard was fully cognizant of what was being done by Ricksecker and fully advised him in the premises. A telegram dated May 5, 1893, was sent to Ricksecker by Barnard. It is as follows:

"St. Louis, Mo., May 5, 1893.

"Owner not filling contract, releases you and me as bondsmen. You follow Dent's advise. Do not pay for May. Can see you Monday.
"[Signed]                                           Geo. D. Barnard."

The Dent here referred to was an attorney at law, and, without doubt, he was consulted, and his advice followed. I am satisfied, from a consideration of the relations of the parties and all the evidence in the case, that the adjustment as made by Ricksecker with the plaintiff was known to, and approved by, the defendant. The fact relied upon by defendant, that he stated in his telegram and letter of May 5th, confirming the telegram, that he and Ricksecker, by reason of plaintiff's failure to complete the building in time, were both released from the obligations of the bond, seems, in the light of what they then and subsequently did, to be a statement of a right to a release which defendant conceived they had, rather than a right which the defendant then and there finally and conclusively determined to assert. Even if his purpose then was, by the use of

that language, to wash his hands of the entire transaction, it, in my opinion, was abandoned by his subsequent participation in, and approval of, the adjustment as made. Neither he nor his principal was apparently willing to rescind the contract by reason of plaintiff's breach. On the contrary, they agreed to waive the breach, take damages resulting therefrom, and go on with their joint venture, in the hope, doubtless, as stated by the defendant in a letter written to his principal on August 24, 1893, of making themselves whole out of the hotel.

The proof shows that Ricksecker failed to pay rent for the premises in question, in the amount of about $18,000. Plaintiff is therefore entitled to a judgment for the full penalty of the bond, $5,000.

It is urged by plaintiff's counsel that he is entitled to interest on the penalty of the bond, by way of damages for nonpayment of the money when the liability accrued, from the date of the breach to the present time; and he relies upon an array of cases, the reasoning of which strongly commends itself to my judgment. These cases are Perit v. Wallis, 2 Dall. 252, 1 L. Ed. 370; U. S. v. Arnold, 24 Fed. Cas. 868; Id., 9 Cranch, 104, 3 L. Ed. 671; Wyman v. Robinson, 73 Me. 384; Judge of Probate v. Heydock, 8 N. H. 491; Carter v. Thorn, 18 B. Mon. 613; Williams v. Willson, 1 Vt. 266; Sedg. Meas. Dam. (9th Ed.) § 678. But inasmuch as the bond in suit was executed and delivered, as the proof shows, in the state of Missouri, its force and effect must be governed by the laws of Missouri relating thereto. Sections 866, 869, Rev. St. Mo. 1889, provide, in substance, as follows: That, in every action upon any bond for the breach of any condition other than the payment of money, judgment shall be rendered for the penalty of the bond, together with costs of suit. These sections were construed by the supreme court of Missouri in the cases of State v. Sandusky, 46 Mo. 377, and Smiley v. Cockrell, 92 Mo. 105, 4 S. W. 443, so as to exclude any other judgment than that particularly specified, namely, judgment for the penalty, with costs of suit. The case last cited was a suit on a bond for the penal sum of $4,000, conditioned for the faithful performance of duties,—in other words, not for the payment of money, in terms,—and in this respect was quite like the bond now in suit. The trial court rendered a judgment for the amount of the penalty of the bond, with an additional sum of $580 for interest, calculated thereon from the date of the breach to the day of trial. This, in the view the court took of the statutes just referred to, was decided to be erroneous. Following the interpretation of the highest tribunal in the state, of its own laws, which is a well-recognized rule of the federal courts, I cannot allow a recovery in this case for a sum greater than the penalty of the bond.