Judge Carr
delivered his opinion.
The case made by the bill is briefly this: that Shelton fy Co. merchants of Richmond, imported some linens from Bremen to Baltimore; that they requested the plaintiffs to enter into bonds with the collector of the port, for the duties accruing to the United States on these goods; that in compliance with this request, the plaintiff, Bnme, executed, with sureties, these bonds to the collector, which the plaintiffs have discharged; that by this payment, the plaintiffs have acquired the right, as well under the laws of Congress, as by the general principles of equity, to be placed in the shoes of the United States, and to enjoy the preference which is secured to them by law, over other creditors; that Shelton fy Co. becoming insolvent subsequently, have conveyed all their property to trustees for the benefit of certain creditors. The prayer of the bill is, that the plaintiffs may be substituted to the United States, and that the trustees be decreed to pay first their debt, out of the trust subject.
Shelton 8? Co. have not answered, and the bill as to them is taken for confessed. The trustees answer, resisting the claim on various grounds.
The points taken by their counsel in the argument, were, 1. That there is no evidence, that flrune fy Co. ever executed bonds for the duties: 2. No proof that they have discharged them: 3. That if executed and paid, the transaction does not present the case of principal and surety contemplated by the act of Congress: 4. That it is not a case for substitution: 5. That there is another fund, (the second deed of trust,) to which the plaintiffs ought to resort.
*441 I.'In considering the first point, I will not slop to enquire, whether the affidavit of Bruñe is admissible, but will throw it out of the case, being satisfied that there is abundance of evidence without it. By the letter of Shelton Co. dated Richmond, September 11, 1818, these defendants say to the plaintiffs, “ The linens sent to your address you will please to bond, and ship them by the first vessel bound for this place. . We have not as yet received the invoice and bill of lading; calculate on getting it tonight. We shall make the necessary entries at our custom-house, and transmit-the same to your address.”
It may not be amiss to remark, in passing, that this last sentence seemed to be considered in the argument, as rendering it probable that Shelton fy Co. meant to pay the duties at the custom-house in Richmond. But, that could not be done. The duties must be bonded and paid to the collector at the port of entry. Nor does the letter indicate such an idea. Shelton §* Co. knew that the invoice, or evidence of it was necessary to the entry of the goods at Baltimore. They supposed that there was but, one invoice; and expecting that it would come to them of course as owners of the goods, they meant to take the proper steps at the custom-house here, to enable them to send on the evidence. This is clear from the letter of the plaintiffs in reply to the above. Under date of September 14, 1818, they say, “The twelve bales of linen per Clara, having been shipped to our address, and being also furnished with a duplicate invoice, we have been enabled to enter them at our custom-house; consequently, you need^ not make any entry to be forwarded here. None of the said linens,” (the letter adds,) “have been bonded. As soon as they are, we’ll forward them to you, and advise you thereof.”
It will be as well here, to dismiss with a passing remark, another point much relied on in the argument, to wit; that the bonds given to the collector could not have been executed under the authority of the letter of Shelton & Co. *442 because the bonds and the letter both bore date on the 11th of September, 1818. But, it is clear to me, that the bonds, though dated the 11th, were not executed till afterwards.
The letter just quoted is dated the 14th, and it states that the bonds were not then given. I. understand it thus. By the act of Congress, the master must report his vessel to the proper officer within 24 hours after his arrival; and within 15 days thereafter, the goods must be entered with the collector. It is not required that immediately upon such entry, bonds should be given;' but the goods cannot be landed until they are given. They are payable on goods of this description in 8, 10 and 12 months from the date of the entry; and, therefore, though executed after it, they- bear equal date with it. Under date of September 24th, 1818, the plaintiffs write to the defendants, Shelton 8f Co., thus: “Your 12 bales linenper Clara, have been forwarded per schooner Varnat, capt. Banks, which sailed a couple of days since. We gave to capt. Banks the original invoice, certified at our custom-house, and the bill of lading signed by capt Banks, both under cover to you. Annexed you’ll find account of charges of said linens, amounting to 8 383 26 cents, for which, if found correct, please give us credit,” &c. The account here referred to, contains a particular statement of all the charges, freight, primage, dray age, &e. paid by the plaintiffs for Shelton <5S’ Co.; and also, of the three bonds entered into at the custom-house; and the letter states, that for that part of it which the plaintiffs advanced in cash, they had valued on Shelton fy Co. in favor of Luke fy Sizer. These accounts are received by Shelton fy Co. without objection, retained by them, and now produced by the defendants as evidence.. The answer which sets them out acknowledges, that the goods had been sent to Richmond. All this evidence, taken together with the law, (which forbids the landing of the goods until the bonds are given,) proves clearly to me, that the bonds were executed as charged in the bill.
*443 II. Have the plaintiffs discharged these bonds? The answer itself states that the respondents have been informed, and believe, that the plaintiffs did pay some money for duties upon goods imported by Shelton 8? Co. and refers to the account before mentioned to shew in what character they paid it. The money, thus admitted to be paid, could be no other than the duty bonds But further and stronger 1 The plaintiffs produce these bonds, agreeing exactly in date and sum with those in the account. Bruñe makes a statement that these are the bonds given to the collector; that they have been paid off by his house, and are annexed to the statement; and to this statement the collector of the port sets his certificate, that it. is correct, only as to a few groats-in the amount; thereby admitting its correctness in every thing else. This, I think, is equal to a receipt in full of the bonds.
III. We come now to the only real question in the case. Have the plaintiffs a right to the priority they claim, 1. Under the laws of the United States: 3. Under the doctrine of substitution ?
1. In the 3rd volume of the laws of the United States, (old edition,) p. 433, sec 5, it is enacted, that where any revenue officer, or other person, here after becoming indebted to the United States by bond or otherwise, shall become insolvent, &c. the debt of the United States shall be first paid; and he is declared insolvent by the act, who, not having enough to pay all his debts, shall voluntarily convey all his property away. (It was admitted on all hands, that Shelton <§• Co. were insolvent, and had made a general conveyance of their property.) Ath vol. L. U. S. (same edition) p. 386, sec. 65. If the principal in any bond given for duties on goods, &.c. shall become insolvent, &c. and any surety in the bond &c. shall discharge it, such surety, &c. shall have and enjoy the like advantage, priority or preference, for the recovery of such monies, &c. as are reserved to the United States, and may maintain a suit in his own name, in law or equity, for all *444 monies paid thereon. Is the case of the plaintiffs within this last act ? ' I incline to think not. The law speaks of and surety in the bond. Although these bonds were executed by Bruñe, for the debt of Shelton 8,- Co. and the plaintiffs, by discharging them, paid their debt; yet Shelton 8? Co. were not principals and the plaintiffs sureties in the bonds. They could hardly, it would seem, maintain an action on the bonds at law, against Shelton 8? Co. as principals; and I doubt whether equity could help them. The law was providing for a particular case. If ours be not that case, equity, no more than law, can make it so. Both Courts must construe the statute according to its true-meaning; and that meaning is the same, whichever forum, has to expound it.
2. Can the plaintiffs claim a preference to the other creditors of Shelton <S* Co. on the doctrine of substitution ? This doctrine, which was, I believe, borrowed .from the civil law, has long been well known to the English Chancer^, and constitutes one of the most beautiful features of the system. Pothier, in his Treatise on Obligations (the greatest portion of which, Sir William Jones says, is law at Westminster, as well as at Orleans, and which seems to be growing still more into use since his day,) Pothier says, Art. 6, No. 518, “ It is to be holden as a principle, that all who are bound for a debt for others or with others, by whom they ought to be discharged, either for the whole or a part, have a right, in paying.such debt, to require the cession of the-actions of-the creditor, against the other debtors who are liable for it.” “This obligation of the creditor to cede his actions, is grounded, (he says,) on this rule of equity, that being commanded to love all men, we are hound to grant them every thing, which they have an interest in having, when we may do so without injuring ourselves.” He adds, “ a debtor in solidum having then a just interest in having the actions of, the creditor, against his co-debtors, to make them pay their part of a debt which they owe as well as he, the creditor cannot refuse it. For *445 the same reason he cannot refuse it to a surety, and gene-. rally to all those, who, being bound for the debt, have an interest in being discharged, in whole or in part, by those for or with whom they are debtors.”
In enforcing these principles, Courts of Equity look not to the form, but to the essence, of the transactions. They consider the doctrine of substitution, not as one founded in contract, but the offspring of natural justice. Nor do they leave it -to the creditor to cede his actions; but so soon as a third,person, who has become bound with the debtor, pays his debt to the creditor, they substitute him to the creditor, giving him every right, every lien, every security, to which the creditor could resort; and if the creditor should, with bad faith, release any of those securities, it would be a bar pro tanto to his recovery against the surety. (See the cases on this subject, referred to in Mitchell v. Tompkins, 2 Rand. 428; M’Mahon v. Fawcett, Ib. 514.)
How does this doctrine apply to the case ? Shelton fy Co. were the importers. The duties on the goods were a debt accruing to the United States, from the time of the actual importation; and the importation was complete, as soon as the goods were brought within any port, with the intention of being unladen or sold there. U. S. v. Vowell, 5 Cranch, 368. The Mary, 1 Gall. 206; U. S. v. Arnold, 1 Gall. 348. U. S. v. Prince, 2 Gall. 204. Immediately, therefore, that these goo.ds reached the port of Baltimore, Shelton Co. owed a debt to the United States, which, independent of any security by bond, they had a right to enforce by action of debt on the principles of the common law. If Shelton 8? Co. had themselves executed a bond for the duties under the revenue act, it would not have extinguished the original debt created by the act of importation; much less was that debt extinguished by the execution of such bond for them by the plaintiffs. From the time of the importation the United States has a lien on the goods. This is collateral to the personal claim *446 on the importer. The law provides, that the importer, within 15 days after the arrival of the goods, may enter them, pay the duties at, once, or give bond with sufficient sureties to secure the payment of them in future; or otherwise, that the goods be deposited in the public stores, as a security for such payment. If the importer gives bond with sureties for the duties, this security takes the place of the goods, and they are released; but in either case, whether the goods remain as a security, or the bond is given in their stead, the original debt remains. The act directing bond to be given, evidently intended to extinguish no debt, but to substitute one security for another; for throughout the act, the bond is called a bond to secure the duties, and not a bond in payment of the duties. For the positions here taken, I refer to the United States v. Lyman, 1 Mason, 482, where the whole subject is ably discussed, and many cases cited.
Here then, the plaintiffs, at the request of Shelton 8? Co. executed bonds to the collector for the payment of the duties on their goods, Shelton Co. remaining bound to the United States to the full amount of those duties. The United States had their choice, either to sue Shelton 8? Co. on their original debt, or the plaintiffs on their bond. Shelton fy Co. were the principal debtors; by which I mean, those who contracted the debt for their own benefit. The plaintiffs (call them sureties or what you will) were persons bound for the debt of another. The United States, if they had chosen to sue Shelton 8? Co. would unquestionably have had a preference over every creditor who claims under the deed of trust. But, instead of suing Shelton 8,- Co. they collect their debt of the plaintiffs. Ought not the plaintiffs then, to succeed to the rights of the United States ? To be substituted to their lien, their priority ?
It is objected that this is not a case for substitution, because Shelton 8¡- Co. were not principals, and the plaintiffs' sureties in the same bond; and we are told, that all the cases in the English books are of this kind. I grant *447 that when one man becomes bound for another, he generally takes care to have that other bound along with him; and, therefore, the cases for substitution are generally this kind. I admit, also, that when a statute gives a particular remedy, (as the law before cited,) to a surety in a bond, for recovery of the debt paid for his principal, we may be hound to follow the strict letter of the law. But, the doctrine of substitution is governed by principles wholly different. It has nothing of form, nothing of technicality about it; and he who, in administering it, would ti stick in the letter,” forgets the end of its creation, and perverts the spirit which gave it birth. It is the creature of equity, and real essential justice is its object. All agree that where A. is bound in a bond with B. for B’s debt, the doctrine of substitution holds. . Now, I ask, where is the difference in the eye of reason, whether A. is bound for the debt of B. jointly with B. or separately from him? He is still bound for the debt of B. As between him and B. he stands as much in the relation of a surety, as if they were jointly bound. So he does, as between him and the creditor, where the separate bond is taken as collateral security. ' Suppose A. owed B. a debt by simple contract or bond. C. at the request of A. executes his separate bond to B. as a collateral security. After this, the creditor B. gets a mortgage from the debtor A. further to secure this debt. Would not C. upon dis. charging the debt, be substituted to this mortgage ? Again. Suppose that C. when he executed his separate bond to pay the debt of A. to B. had taken a mortgage from A. for his security. I ask, would not the creditor B. have had a right to resort to this mortgage to satisfy his debt? These principles are the every day equity of the Court; and the case before us rests on precisely the same ground. The United States are the creditor; Shelton fy Co. the debtors. At the request of these debtors, the plaintiffs execute their bomb to the United States. The priority given by the law to the United States, is the mortgage taken by the creditor *448 of his debtor. The plaintiffs pay off the debt, and ask the Court to give them the benefit of the creditor’s lien. Who can object to this? Who is injured by it? Not the United States; for, they have received their debt from the plaintiffs, and justice binds them to give the plaintiffs their vantage ground. Not Shelton 8,' Co:, for they have no interest in the matter. Not the creditors of Shelton 8? Co. under the trust; for, the United States had this priority. These creditors were but subsequent incumbrancers. The elder lien was upon the property; and whether enforced by the United States in their own name, or by the plaintiffs standing in their stead, could make little difference with these creditors.
There are some minor points that I do not notice, not because they have been overlooked, but because they do not seem to have any .weight. Thinking the right of the plaintiffs clear, to come in under the first deed of trust, I have not thought it worth while to speak of the second.
I am clear that the decree be affirmed.