Ttjcker, P.
The money that was standing at Gregory’s credit in bank, at the time of his death, was drawn out and applied to the discharge of the note given by Ford and Thornton, to retire Gregory’s note, after his death, by the joint act of Gregory’s administrators, Ford and Maury, upon some (I think it unimportant what) arrangement or understanding between the two administrators. It is contended, that by this arrangement, this fund was lent by the joint administrators to Ford individually; that thus he has paid out of his own funds, the debt for which he and Ford were jointly and equally bound; and that, consequently, his administrator has a right to contribution of a moiety from Thornton.
According to my view of the case, no part of Gregory’s deposit in bank, constituted, upon his death, general assets of the estate, except the excess above what was sufficient to liquidate the note of Gregory due to the bank. The *698 bank, in fact, was only a debtor for the difference. Bull. N. P. 179. Had Gregory, in his lifetime, sued the bank for deposit, though it could not set-off at law, because his note was not due, yet upon shewing in a court of equity, t¡lat Gregory and his indorsers were insolvent, there could be no question of its right there, to stop the amount in its own hands. Equitable set-offs or discounts existed prior to and independent of the statute; Ex parte Stephens, 11 Ves. 24. Ex parte Blagden, 19 Ves. 466, 7. Ex parte Flint, 1 Swans. 30, 4. And the doctrine of stoppage in equity has always been far more extended than the doctrine of set-off, even under the broad language of the english statute respecting mutual credits, and our own statute respecting discounts, 1 Rev. Code, ch. 127, p. 487. Thus, in the case just put, although the bank could not, at law, set-off a debt payable in futuro against a debt due in presentí; yet it will scarcely be denied, that upon proof of danger of insolvency, equity would stop the payment; for, in equity, it matters not that the debt due to the defendant, which he seeks to set-off, is payable in futuro. Thus, in cases of bankruptcy, which are always settled very much upon equitable principles, this is admitted; as in Ex parte Prescot, 1 Atk. 230. the petitioner was a creditor in presentí, for £ 110.; the bankrupt, on the other hand, held his bond for £ 340. payable in futuro: if the debts were set-off against each other, the balance against the petitioner would be £ 230. but if he had been forced to prove his debt under the commission, and take a dividend only upon it, the result would have been very different: he would have been a considerable loser. The question was considered in reference to the statute of 5 Geo. 2. relating to mutual credits ; a phrase, which appears to me not more comprehensive than the word discount, used in our statute, which embraces (I incline to think) all cases of mutual money demands due at the time of the plea; and the statute of 5 Geo. 2. did not do more. Yet, by the equity of that statute, it was decided by lord Hardioicke, that the petitioner *699 should bo allowed to sct-olF, and be held debtor only for the balance after deducting the bankrupt’s debt to him.
If, then, in ordinary cases, where there are mutual debts between two persons, a discount would be allowed, upon its appearing that there was risque of insolvency, although one of the debts may be sohendum in futuro, the bank might in Gregory’s lifetime, and to the moment of his death, have insisted on retaining his deposit if there was danger of loss. The only doubt that could arise about this, is, that the deposit of a dealer is, by the usage and custom of the bank, held always subject to his check, notwithstanding he is debtor on an accommodation note. But this usage or custom of dealing cannot be more obligatory on the bank, than an express promise to pay the amount of the deposits. And yet an express promise to pay, does not exclude the creditor from the right of stoppage or retainer. This has been often decided. Thus, in Atkinson v. Elliott, 7 T. R. 378. Elliott, in May, sold goods to Hodges, for £ 430. at six months credit; and, in September, ho sold him another parcel for £ 230. also at six months : in November, when the first was due, and the last not due, Hodges gave him a bill of exchange for £ COO. payable in December, long before the amount for the last parcel of goods became due; and Elliott promised in writing to pay Hodges the excess of the bill lohcn received. .Elliott received the amount of the hill in December, when it became due: and Hodges became bankrupt two days after. The assignees demanded the excess of the bill, and Elliott claimed to retain it. His right to do so was resisted because of his express stipulation to pay it; it not having been in the contemplation of either party, at the time of the transaction, to do more than pay off the first sum, which was due. It was, in effect, an agreement, that the excess of the bill should not be applied to the second sum which was not duo. Nevertheless, the court held it so applicable, and the retainer was allowed accordingly. «Justice,” says lord Kenyon, “requires that the whole account on both sides should be stated, and that *700 the balance should be the only thing to constitute the debt.” It was, therefore, considered as within the case of Ex parte Prescot, and within the equity of the statute of set-off.
The case of Lechmere v. Hawkins, 2 Esp. Rep. 626. is t0 tjje same effect. That case did not arise under the bankrupt law. The case of Taylor v. Okey, 13 Ves. 180. corresponds with both of them. The point was upon a claim to set-off against a debt, a sum of money borrowed by the creditor from the debtor under an express promise to pay: the lord chancellor said, “ My opinion is that this claim of set-off must be allowed in equity; and except from the circumstance that the parties are not the same, it would do at law under the authority of Lechmere v. Hawkins, which is precisely this case. The argument addressed to me yesterday for dissolving the injunction, was the same that I used; that the express promise bound the party, making it an absolute payment under all circumstances; but lord Kenyon answered, that he knew no such law; and did not think there was any legal obligation, and the mutual demands were within the statute of set-off. But what weighs with me, is what was said by lord Kenyon, who was perfectly acquainted with the rules of equity; that if he should refuse the set-off, it would drive the party into equity.”
If then the bank could in case of Gregory’s insolvency, have insisted on retaining, that right was not lost by his death. They had a right to say, “ We are debtors only for the excess:” and they, doubtless, would have retained, but for the payment of Gregory’s note by the proceeds of that of Ford and Thornton. Ford and Thornton having paid it, stood in the shoes of the bank, and, on the well established principles of this court, were entitled to all its rights and remedies. Tompkins v. Mitchell, 2 Rand. 428. Enders v. Brune, 4 Rand. 438. Watts v. Kinney, ante, p. 272. The bank had a right to apply the deposit to the payment of the debt due to it: therefore, Ford and Thornton had a right to demand that it should be so applied. There was no ground for considering those funds part of the ge *701 neral assets, as in point of fact, the bank was only the debtor of Gregory for the balance. If so, there has been no misapplication of those funds, admitting that they have been paid in discharge of this debt, by the joint check of both administrators. They cannot be responsible for the amount of them to creditors of superiour dignity, because no such Creditor, if there be any, could have any right to the application of funds, which were appropriate to the discharge of this bank debt.
For these reasons, I am of opinion, that the decree should be affirmed.
Cabell and Carr, J. concurred in the opinion of the president.
Brooke, J.
I am also of opinion, that the decree should be affirmed, because 1 think the appellant has not shewn, that there were any debts due from Gregory’s estate, of superiour dignity to that which he owed to the bank. But if such debts of superiour dignity had been shewn to exist, requiring the money which Gregory left in bank, to satisfy them, the question would then have been, Whether upon the death of Gregory, before his note indorsed by Ford and Thornton came to maturity, his money deposited in the bank, was assets of his estate, subject, so soon as there was a representative of his estate, to the payment of his debts, in the order prescribed by law ? Had Gregory’s debt to the bank fallen due in his lifetime, it is admitted, that the bank might have insisted on applying a portion of his money on deposit there, to the payment of the debt he owed it, either in a court of law or equity. But the true point of inquiry in this case, is, What were the rights of the bank, and Gregory’s creditors claiming debts of superiour dignity, upon his death before his debt to the bank had fallen due ? Would a court of equity disregard the debts of superiour dignity ? Would it allow the bank to take payment of the simple contract debt due to it, out of Gregory’s money held *702 by it on general deposit, in preference to his creditors whose claims were of superiour dignity ? Of this, to say the least, I have great doubt. If the priority of right to satisfaction out of the assets of a deceased debtor, attaches on them the moment he dies, I cannot see upon what principle (there being equal equity) this priority can be overlooked by a a court of equity. The cases that have been decided under the bankrupt laws in England, do not exactly apply. In trade, among merchants, a credit is equivalent to money. A debt in presentí though solvendum in futuro, may be considered as a payment, and a good set-off against money in the hands of the creditor. In the other cases that have been mentioned, it does not appear, that there was any question of priority or dignity of debts: they were cases, in which the substitution of a surety to the rights and remedies of the creditor, was alone in question.
Decree affirmed.