Parker, J.
The only difficulty I have had in this case was occasioned by the terms of the decree in the suit of Drafin against Miller, Fretwell and others. It is evident that the dissolution of the injunction of Fret-well against Miller decided nothing as to the payment of the .-£160. 3. 1. by Draffin to Fretwell. That matter was not put in issue by the pleadings, and the injunction ought to have been dissolved, and no doubt was dissolved, upon the ground that Fretwell had no right to the conveyance of the title which he sought. The same order must have been made, if Fretwell had proved the payment by himself to Miller’s agent, of the ¿C166. 3. 1. because it was clearly established that the purchase of the land was made by Fretwell and Douglass for the benefit of Robert Draffin. So too the decree in the case of Draffin against Miller and others, so fox as it directs the title to be made to Robert Draffin for the land in the bill mentioned, and a release of Boyd Miller’s right, “ so soon as it is ascertained that Miller has obtained payment of the said sum of o£ 166. 3; 1. with interest &c. from the defendant Fretwell or his securities, or from any other person,” — without directly decreeing that Fretwell should pay that sum, — seemed to me not to conclude the question of the liability of Fretwell, so as to bind Fagg; because such a decree might have been properly made, whether Fretwell had received from *596 Draffin the £ 166. 3. 1. or not; and the fact that the decree fixed the liability of Fretwell for that sum, was perhaps rather matter to be inferred by argument from the decree, as having constituted one of its grounds, than directly adjudicated. See 1 Starkie on Evid. 183. et seq. Id. 202, I was therefore inclined at first to think that the question of FretwelVs liability had not been conclusively settled by the decree actually made, because the opinions expressed by the chancellor in the first part of it were rather the annunciation of the grounds and reasons for making the decree, than the decree itself. But further reflection, and conference with my brethren, have satisfied me that this impression was incorrect. The fact of the payment of the balance of the purchase money for the land, by Robert Draffin to Fretwell, who had given his bonds to Miller, is expressly alleged in the bill, and denied in the answer. It was therefore a matter directly in issue; and upon the evidence adduced on that point, the chancellor, in the first part of the decree, expresses the opinion that this balance of ¿£166. 3. 1. “though not paid over to the defendant Miller, as it ought to have been, by the defendant Fret-well, has been paid by the plaintiff to the defendant Fretwell.” This opinion I must regard as a judicial decision of the fact between Draffin and Fretwell, not to be afterwards drawn in question between them. It is a matter directly determined, upon an issue formally made between the parties; and public policy requires that it should not be again brought into litigation, unless fraud in obtaining the decree is alleged and proved. So too it is binding upon the surety of Fretwell, and upon all other persons, as an adjudicated fact j that is to say, no person, in any controversy, can be permitted to deny that Fretwell received the ¿£ 166. 3. 1. from Draffin, and is bound for it. They may deny their own obligations to pay as surety or otherwise, but not his. Munford &c. v. Overseers of the Poor, 2 Rand. 313. Craddock v. Turner's adm'x, 6 Leigh 116. Ray v. Clemens, Id. 600.
*597 It is unnecessary to decide how far this principle might be affected by the proof of a. fraudulent combination to charge Fretwell. There is no such evidence in this cause, and the most that can be said is, that the decree was obtained on the testimony of an interested or discreditable witness. Fretwell’s attention was called to the evidence of that witness, and he might have shewn his interest or want of credit, if he had used ordinary diligence, by the same proof that the appellee subsequently produced. Even the discovery of new evidence, which merely goes to impeach the credit of witnesses examined in the original suit, or of cumulative witnesses to a litigated fact, is not sufficient to impeach a decree. Livingston v. JBvFbs and others, 3 Johns. Ch. E.ep. 124. Moreover there was other evidence strongly corroborative of Thomas D raffin’s, and in the present case itself there is no testimony outweighing the positive denial of the several answers, corroborated by circumstances, or disproving the receipt by Fretwell of the balance of the purchase money from Draffm to be paid to Miller.
Taking, then, the fact to be that Fretivell did receive this money, and ought to have paid it to Miller, the only-other question is as to the right of Fagg to be substituted to the remedies oí Miller against the land of Draffin, He claims this right, because be has paid Miller a debt binding Draffim’s land; and although he has paid it as surety for Fretwell, who received the money from Draffin, and ought to have paid Miller, yet he contends that as Miller could charge the land, he, on the principle of subrogation, may charge it, as standing in the creditor’s shoes, and entitled to all his remedies, not only against his principal Fretwell, but all others liable for the debt; and for this he cites 1 Pothier on Obligations, part 2, ch. 6, art. 3, [427,]
.It is obvious, I think, that Pothier, in this passage, lays down the doctrine too broadly; and that in part 3. *598 ch. 1. art. 6. § 2. [520.] he states it more accurately, when he says “ that all those who are bound for a debt for others, or with others, by whom they ought to be discharged either wholly or in part, have a right, upon paying, to demand a cession of the actions of the creditor against the other debtors.” If, in equity and justice, Draffin or the holders of the land under him be bound to discharge this debt or any part of it to Fagg, then, and not before, he may ask a court of chancery to substitute him in the place of the creditor Miller. The doctrine of subrogation, it must be remembered, is the offspring of natural justice., and is not founded in contract. It is the creature of equity, and is so administered as to attain real essential justice, without regard to form. “ He who, in administering it, would stick in the letter, forgets the end of its creation, and perverts the Spirit which gave it birth.” Judge Carr in Enders &c. v. Brune, 4 Rand. 447. Now here it is attempted to charge Draffin, because some of the books lay down the broad proposition that a surety paying may require the creditor to subrogate him to all his rights, actions and hypothecations against all persons liable for the debt. But the courts, in applying the doctrine, have taken care to make it subserve the ends of justice. Thus they always enquire who is the principal debtor, and if any one comes into his room as to the creditor, they absolve previous sureties; holding that the supplemental surety comes also into the room of the principal debtor, as to these previous sureties. On this principle the case of Parsons v. Briddock, 2 Vern. 608, was decided, which is recognized in Wright v. Morley, 11 Ves. 12. and in all the subsequent cases. There, the original sureties, who paid, were substituted to the rights of the creditor against the bail: but certainly if the bail (the supplemental sureties) had paid, they could not have had a cession of the action of the creditor against the sureties in the bond. Yet they were liable to the credi *599 tor, and on the principle contended for by the counsel for the appellee, they ought to have been placed in his shoes. '
The principal debtor, the real debtor in this case, is Fretwell. Douglass was an original surety, and the land of Draffin was also bound. When the judgment was obtained against Fretwell, and he gave a delivery bond with Thomas Draffn as his surety, if Robert Draffin had paid the debt, he would have been subrogated to the rights of the creditor, not only against Fretwell, but against Thomas Draffin, who had interposed, himself between the principal debtor and the original sureties. Afterwards, when Fagg became the surety in the injunction bond, although but a surety himself, yet he came in the room of Fretwell as to all sureties who would have had a right to call on Fretwell for payment, either directly, or by subrogation to the actions of the creditor; This is precisely the principle of the case of Parsons v. Bridiock; and it is the correct principle; since, but for bis interference, the debt might have been made out of the principal debtor, or his first supplemental surety Thomas Draffin, and Robert Drajfn and those claiming under him might have been discharged.
If this be so, it would be an absurdity to hold that Fagg, paying for the real debtor, can be entitled to all the remedies of the creditor against Draffn or Draffn''s land, or against his grantees Douglass and Harper.
I am of opinion to reverse the decree, and dismiss the bill with costs.
Tucker, P.
I take as the foundation of my opinion in this case, the fact that Draffin had, through his son Thomas, paid to Fretwell £ 1G6. 3. 1. the balance due to Miller, for the purpose of being paid over to Miller. This fact is settled as between Fretwell and Draffin, and cannot be contested by any third person. Fagg is no more entitled to contest it, than the surety in an admi *600 nistration bond can contest the justice of the judgment of a creditor against the estate. He is conclusively bound' by what is decreed against his principal, for his obligation is to pay if the injunction be dissolved, and without any reference to the justice or injustice of that dissolution. He can neither appeal from it, nor call it in question, nor renew the contest by a new bill of injunction ; for that would be infinite, as every successive surety in the successive injunctions would, upon the same principles, have the same right. Fagg then is conclusively bound by the several decrees, unless he has successfully impeached them. This he has not done, — if it had been even competent to him to do it upon any ether ground except confederacy between Fretwell and Drafin, which cannot be pretended. The only ground •upon which his bill rests is the peijury of Thomas Drafin, which is not a sufficient ground for this anomalous proceeding. It is not a sufficient ground for a new •trial or relief in equity (1 Johns. Ch. Rep. 322, 324, 6 Johns. Rep. 248.) and certainly would not be so in -this case, where the character of the witness was thoroughly sifted in the former suit; where the evidence was sufficient, without his testimony, to sustain the decree ; and where the material fact, that Fretwell received, the money, is proved by his own note, filed in the cause at law in which judgment was rendered against him for the amount.
Taking then as unquestionable the facts established by the decrees, that the purchase from Miller by Fret-well and Douglass was made for Drafin, and that he has paid Miller the whole purchase money except £ 166. 8. 1. which he has paid to Fretwell, to be paid over to Miller ; how stands the case ? The creditor, not having received the balance due to him, and being, satisfied that Drafin had honestly paid it to Fretwell, sues upon the bond of Fretwell and Douglass, instead of endeavouring to throw the charge upon the land. This was *601 both equitable and prudent; forbad he attempted to charge the land, Fretwell must have been a party, and the court would, in that suit, have “ put the saddle upon the right horse,” or if it decreed against Drajjin in favour of Miller, would have decreed over against Fret-well in favour of Drajjim,.
Judgment having been recovered against Fretwell and Douglass, and a Ji. fa. levied on FretwelVs goods, he gave a delivery bond, in W'hich Douglass did not join, but Thomas Drajjin became his surety. Judgment was rendered on the delivery bond, and affirmed on appeal.
Then comes the injunction ; and Fagg becomes surety in the injunction bond. The creditor still pursues Fret-well by suit on this bond, and obtains judgment and sues execution against him and Fagg. By this lime Fretwell is insolvent, and Fagg, before he pays off the execution, files this bill, seeking subrogation to all Miller's rights — not against Fretwell, but against Drajjin and his land!
The execution against Fagg being unsatisfied when he filed his bill, he can only be looked upon in the light of a surety who is liable for a debt and is demanding subrogation.
It is contended, however, that he is to be considered as a stranger who lias volunteered to pay off the debt. If so, it may well bo questioned whether he has title to relief, since by our law no man has a right to pay another’s debt, for which he is not bound, except in the case of a bill of exchange, by the law merchant. It is conceded by Fothier, as a general rule, that a cession of actions cannot he compelled by a stranger, who pays a debt for which he is not liable. 1 Pothier, part 3, ch. 1, art. 6, § 2, [520,] He states truly, that in strictness, where a debt is paid, it is extinguished, and there is no longer an action to cede; hut for the purposes of justice, by a fiction of law, the payment is looked upon as a purchase by the party who pays, and a sale by the cre *602 ditor. And so in our courts of equity, though the judgment is in fact extinguished by the payment, yet it is kept alive in contemplation of equity, for the benefit of the surety. Per Marshall, C. J. in 2 Brock. Rep. 254. But this fiction will not be adopted where it will effect injustice, and particularly to the prejudice of those having strong claims to exoneration. A stranger, it would seem, is denied the benefit of it, and cannot demand subrogation. Such at least is the suggestion of the late chief justice. 2 Brock. Rep. ubi supra. But even admit that as bonds in Virginia are assignable, the stranger who pays off a bond is to be considered as entitled to be subrogated to the creditor’s rights; the principle would still not avail the appellee. For he paid as surety, and as surety for Fretwell; and the utmost limit of his rights was subrogation to the creditor’s rights against Fretwell, and against all who were bound for FretweWs debt, and whose right of exoneration was not equal or superiour to his own. If their equities were equal, the court would not interfere; and still less, if his were inferiour.
Let us then examine the claims of the respective parties more closely. “ The benefit which the law allows to the surety is, that when he pays, he may require of the creditor to subrogate him to all^ his rights, actions and hypothecations, as well against the principal debtor for whom he has become surety, as against all other persons who are liable for the debt.” Now he who áctually owes the money is the principal debtor; and here Fretwell was, both in form and sqbstance, principal; in form, as he was bound in the bond to Miller, and in substance, as the money was due from and to be paid by him. Draffin, on the other hand, being bound for the money indeed, as his land was bound for it, but owing not a cent of it, stands in the character only of surety for it.
What was the effect of this relation of the parties ? Why, as Draffirtis land was bound if Fretwell did not *603 pay, he had a right to demand that the creditor should either proceed (and that diligently too) against the real debtor, or should permit him to do so. This is a common equity. See 4 Desauss. Ch. Rep. 44, 227. And upon this proceeding, a judgment being obtained against Fretwell and Fagg upon the injunction bond, Fagg would be compelled to pay the money for the exoneration of Draffn. Now the creditor has done precisely that which Draffm had a right to demand that he should do. He has sued Fretwdl and Fagg, instead of enforcing his claim against the land. He has preferred to recover his debt from Fretwell, who he well knew did owe it, rather than from Draffm, who he well knew did not owe it. And Fretwell being insolvent, he enforced payment from Fagg, as he was bound in equity to do, for Draffn’s indemnification. And yet, as soon as this is done, — as soon as Draffm’s land is freed from the incumbrances, — it seems to be supposed that the tide is to be rolled back upon Draffm, and he is to be overwhelmed by the reflux of the principle which had but just given him relief.
IPad Draffn actually paid the money to Miller, ho would have been entitled, according to the letter and spirit of the principle quoted from Fothier, to a subrogation to all Miller’s rights against Fretwell, and against all other persons bound for him. One of these was Fagg. If, then, upon the payment of the money, he would have a right to substitution against Fagg, it is impossible that Fagg can have a right of subrogation against him. The two pretensions are antagonizing and incompatible. The former I hold to be unquestionable, and the latter therefore can have no existence.
There is another view of this subject, which seems to me conclusive. Draffn is certainly entitled, upon payment of the money, to subrogation against Fretwdl and Thomas Draffn. Thomas Draffm the surety in the delivery bond, on the principle of Parsons v. Briddock, *604 was entitled to subrogation against Fagg. Therefore Robert Draffin was entitled to subrogation against him, and of course he cannot have it against Draffin.
With these views, I am of opinion to reverse the decree, and to dismiss the bill with costs.
Brockenbrotjgh, J. concurred.