STAJSASD, J.
That Powell was but a simple contract creditor by reason of his indorsement for White, and the payment of the indorsed notes to the bank, is conceded ; and that the deed of trust of White, conveying certain property to indemnify his in-dorsers, did not operate as a covenant to indemnify, so as to give the *claitn of Powell for indemnity the rank of a specialty, is, I think, free from all reasonable doubt. That deed, as it effects this question, contains but a recital of White’s willingness to indemnify, by the conveyance of the property that was conveyed by it. If the recital could be regarded as a covenant for any purpose, (which at least I greatly doubt,) it was but a covenant to convey that property, and that covenant was fulfilled by the conveyance.
Having ascertained that Powell could rank as a simple contract creditor only, the decision of the other and more important question, whether the sureties in the bond of White to Hartman, having paid that bond since White’s death, are entitled to rank as specialty creditors on the assets of White, and retain out of assets that have come to their hands as his administrators de bonis non, against other specialty creditors, is not indispensable in this case. But as that question has been fully and ably argued at the bar, and considered by me, and I have formed my opinion on it, 1 do not deem it proper to decline the expression of it. That opinion is, that the sureties are entitled to rank as specialty creditors, and as such to retain out of the assets that have come to their hands to be administered. This opinion is sustained by the cases of Eppes &c. v. Randolph, 2 Call 125; Tinsley v. Oliver’s adm’r &c., 5 Munf. 419; Tinsley v. Anderson, 3 Call 329 ; Enders &c. v. Brune, 4 Rand. 438 ; Watts and others v. Kinney and wife, 3 Leigh 272; Lidderdale v. Robinson, 12 Wheat. 594, besides other cases in the american courts. These cases furnish a foundation of authority so firm and ample to sustain the opinion, as to render a minute discussion of the question superfluous : and I may add, that the reason-ings on which they depend have so firm a root in the principles of justice, of natural equity, and in those deducible from other cases bearing the closest analogy to, or strictest affinity with that in question, as to vindicate *the opinion, if the cases had not furnished examples of the practical application of them to the precise question.
The court of equity, in marshalling assets, but exercises a power having close affinity to, if not identical with, that invoked by the sureties in this case. The bond that is discharged by the executor, and, as between the parties, the obligee and obligor, satisfied and extinguished, is in effect revived by the court of equity to charge the land, and the simple contract creditors placed where the bond creditor might have been, in charging the realty. So here the specialty, which as such charged the assets, and to which the assets ought to have been applied in exoneration of the sureties, rather than to simple contract debts, as the sureties had a right to require should be done, is, in conservation of that right, still considered as existing, for the purpose of having that done which ought to have been done.
The decree being deemed right in all respects as it affects the questions in controversy between the appellants on the one hand, and each and all of the appellees on the other, I think the court cannot take cognizance, on this appeal, of any question between the appellees. The power of the court to take cognizance of such questions arises only when, on the questions between the appellants on the one hand, and one or more of the appellees on the other, a decision is made which directly or incidentally disturbs the rights of one or more of the ap-pellees, as settled by the decree appealed from. When such disturbance is the consequence of the decision of the question between the appellants and the appellees, there must necessarily result the questions that arise from the new position in which the rights of the appellees are placed; and of such questions the court of appeals has cognizance, , and they should be decided by the court.
I am of opinion to affirm the decree.
*CABEEE, J., concurred in the opinion that the decree should be affirmed.
TUCKER, P.
Upon looking into the deed of trust in this case, I am well satisfied that it does not constitute a specialty debt, It is not like the case of Baker v. Fawcett, in which this court held that the deed of trust was to be taken as such. In this case White was not, when the deed was executed, the debtor of Powell, and peradventure never might be; for Powell was but his indor-ser, and might have been relieved by White’s payment of the note, or might never have paid it himself. This deed was but an indemnity against his contingent liability, and no other indemnity was contracted or covenanted for ; though White was indeed personally liable also in an action on the case, if his indorser took up the note. But in Baker v. Fawcett, the debt was due and ascertained, and moreover it was distinctly acknowledged and declared. The indenture *640 witnessed “ that Fawcett, in order to secure a debt due to A. F. amounting to 2300 dollars,” had granted &c. Here was distinct acknowledgment of a debt under seal, which is the very definition of a specialty. “ Know all men that I owe A. B. A100.” js a good specialty, if it be sealed, and debt must be brought upon it. Dyer 22 b. But it is said that a mortgage is not a specialty, unless there be a covenant for payment. This I do not controvert. But a mortgage does not contain a distinct acknowledgment of debt by the mortgagor. In strictness the words of the condition are the words of the mortgagee, and they do not distinctly set forth a subsisting debt. If debt were brought upon it, the mortgagor would not be estopped to deny the debt, for it is nowhere acknowledged by him. If there were such an acknowledgment on his part, it would be otherwise ; and herein is the difference between this case and Baker v. Fawcett. There the debtor had acknowledged *his debt. But it is said that mere recital of a debt, though in a deed, creates no specialty ; and a dictum of lord Hardwicke is relied on, (1 Ves. sen. 313,) who said that sir Joseph Jekyll so decided. I can find no such case. In the case in Vesey, there could be no foundation for the pretension, for it was the case of a fine levied of the wife’s property to secure the husband’s debt: and it would indeed have been absurd to make the recital of the existence of that a specialty of the wife, binding her personally for its amount. The case therefore has no bearing upon that of Fawcett’s deed of trust.
There is anothér aspect in which the question presents itself. The creditor in the deed of trust is confessedly a creditor beyond the security ; that is, if it falls short, he may recover the deficit. If this deficit be a simple contract debt, it will be barred by the statute of limitations. But surely the statute could never have been designed to apply to a case where, in the most solemn assurance known to the law, the debt is acknowledged under hand and seal. So far from it, the creditor, though out of possession, may foreclose at any time within twenty years. Would it not be incongruous that equity should foreclose after five years, and compel the trustee to sell for the whole, and if, upon his report of sale, a deficit should appear, that it should then consider the balance due as barred by the statute? It seems to me that it would, and that wherever there is a distinct indebtedness acknowledged in the deed, the debt must be considered to be elevated above those vague, indeterminate and loose parol contracts, which the common law regards as of so little weight, that the party, whom it is sought to bind by them, may deny them at pleasure, and bar them by the statute.
In this case,, however, I have already said that the claim of Powell is not a specialty ; and with this view of its character, the question of retainer is unimportant, *as the whole fund is insufficient for the payment even of specialty demands. I have however examined it with some care, and am of opinion that even if Powell were a specialty creditor, his representatives could not avail themselves of the doctrine of retainer, under the circumstances of this case. Having no assets in their hands to account for, there is nothing for them to retain. The phrase and the principle are equally inapplicable to their case. If indeed they had assets which the administrator de bonis non was seeking to recover, I have no doubt they would be entitled to retain against debts of equal dignity, although in his lifetime Powell made no election, and set apart none of the assets for the payment of himself. But as they have none, the question is not a question of retainer, but of recovery. It is a question whether the executors of the deceased administrator can recover the amount of his demand, out of the assets which he did not collect, and which have come to the hands of the administrator de bonis non since his death, in preference to creditors of equal dignity ; and this upon the basis of the right of retainer which he had in his lifetime. Now this is a sheer question of law, and must be decided by legal principles, since the court of equity here is administering legal assets. How then would his executors sue at law? The idea of the learned judge is, “that the operation of law is equivalent to a judgment and execution for him, and that he stands in the situation of a judgment creditor who has sued out execution, as soon as he qualifies.” Be it so, for the sake of argument; yet by his death this fictitious judgment is abated, and in order to enforce payment from the administrator who holds the assets, it must be revived against him. The very suggestion presents its own refutation. Shall he sue upon his original demand? If he does, I cannot perceive how he would reply to a plea by the administrator de bonis non, of retainer by himself for his own *debt. Would it serve his purpose to say that his testator had had a right to retain out of the assets in his hands, but had not retained? If so, he must be held to have waived his right. Or could he say that his testator had no assets out of which to retain? If so, does that give him a right to retain out of the assets which a subsequent administrator has since recovered? I think not. It was his misfortune, if he had not assets, and his own fault and folly not to retain, if he had.
When to these considerations we add, that there is no case in the books, nor any dictum in an elementary treatise, which remotely hints at the right here asserted, we may consider ourselves justified in repelling the pretension. It is indeed in conflict with fundamental principles of english law; by which, even if the administrator could, by an artificial system of reasoning, be supposed to have a judgment against himself, it could not avail him against the administrator de bonis non, against whom it never could be revived.
The doctrine of substitution has next been elaborately discussed in the cause; and some comparatively recent british adjudications have been arrayed against our own. The appellees having paid off a large specialty debt of one Hartman, as the sureties of White, claim to be substituted to Hartman’s priority in the distribution of the legal assets of the estate ; and it is contended by the appellants that they have no such right, since the bond was extinguished by the payment.* *641 'This position is maintained upon the authority of Copis v. Middleton, 1 Turner & Russ. 224, — a work which we have not in our library, but from which there arc large extracts in the notes to the last edition of Story’s Equity. The decision is, as it seems to me, in direct conflict with our own cases ; and that would be a sufficient *apology for declining to follow it, and for waiving any examinatio,n into its consistency with well established principles. But the high authority of lord Eldon seems to demand that we should look narrowly into the case, that we may discern whether, in our own decisions in Virginia, there is any lee way or variation from the true course marked out by the established principles of law and equity.
Upon the examination which I have made my mind is satisfied, that if the case of Copis v. Middleton extends to the case of payment by the surety after the principal’s death, lord Eldon has deviated from the principle of the roman law, which has been adopted in the equity code of the english law ; that he has overruled and departed from some of the prior cases in his own court; that he has struck at the root of the only principle on which a very large and important head of equity depends ; and that the decisions will moreovor lead to the most flagrant absurdity in its application. This is indeed an adventurous undertaking; and if I fail, I must submit to have it said of me, as it was of another — ‘‘magnis tamen excidit ausis.”
Upon the first point, — the alleged deviation from the roman law, I must content myself with referring to the note of judge Story in his Equity, vol. 1, 499, c. note 3, page 477, and to his quotations from the roman law, p. [479,] [480]. Erom them it will appear that this very objection of lord Eldon, that the debt is extinguished, and there is therefore nothing to which the surety can be subro-gated, is fairly stated and fully met. Speaking of the surety’s right, when he has paid the debt, to be placed in the shoes of the creditor and have a cessio actionum, it is said — “ Pot-erit quidem dici nullas jam esse ; cum suum perccperit, et perceptione omnes liberati sunt. Sed non ita est; non enim in solutum recepit, sed quodammodo nomen debitoris vendidit.” (“It may indeed be said that they ” [the actions, or bonds] “ are now *null; since the creditor has received his debt, and all are liberated by its receipt. But it is not so ; for he has not received it in discharge, but has, as it were, sold the name of his debtor.”) Thus the debt is, in favour of the surety, not treated as if it were paid, but is regarded as if it were sold: it is looked upon not as extinguished, but as transferred, with all its obligatory force against the principal.
The second point insisted on is, that the decision of Copis v. Middleton, if it goes to the extent contended for, overrules previous adjudications of the english courts, which rest upon the controverted principle, now for the first time, I think, repudiated in equity.
A report of the case of Copis v. Middleton not being in our possession, we are compelled to speculate somewhat upon the extent to which it has gone. Erom the extracts in Story’s Equity, and the decision (upon its authority ) of Jones v. Davids, 4 Russ. 277, I take it that his lordship not only denied to the surety the right of standing in the shoes of the bond creditor whom he has paid off in the lifetime of the principal, but also where he has paid off the bond after the death of the principal. “With respect” (he says}- “ to the bond paid off after the death of the principal, the questions are, whether, inasmuch as at the death of the principal there was money due upon the bond, there was an equity on the part of the surety to compel the creditor to go in against the assets of the principal ; and whether, there having been no interposition for that purpose, the right of the surety to stand in the place of the creditor can now be maintained. When it is considered that this was a joint bond; and that no action at law could be maintained except against the surety, the surviving debtor,” [an argument, by the way, that-can have no force with us since the statute as to joint rights and obligations] “it is a strong proposition to say, that the surviving debtor is to be considered in equity, as a '^specialty creditor against the assets of the deceased debtor.” 1 Story’s Equity, § 499 d. note 3, p. 477. Hqre it would seem clear that the surety who pays off the bond after the testator’s death is denied the dignity of a specialty creditor : and accordingly the case is so understood in Jones v. Davids, 4 Russ. 277, where it is expressly decided that in such a case the surety is only a simple contract creditor of the testator’s estate. This is the only position we are interested to controvert; for we do not, in our courts, place the surety in the shoes of the bond creditor, where he has paid off the bond in his principal’s lifetime. We still consider him as a creditor by simple contract. There is, at that time, no superior dignity in one debt over the other. There is no right, no privilege of the creditor, to which the surety can be subrogated. . Eor though the bond should bind the heirs, yet during the debtor’s life it cannot affect the realty ; and as to his personalty as well as realty, all creditors have, during his life, the same privileges. Substitution or assignment is therefore useless, as was justly said in Gammon v. Stone, 1 Ves. sen. 339, and Woffington v. Shaw, 2 Ves. sen. 569. But after the principal’s death, there are rights which the creditor has, and to which the surety has a right of subrogation. These are. the right to go against the heir, and the right of priority in the administration-of the assets. We do not then encounter the absurdity which is objected by lord Eldon, of regarding the surety, who has paid the debt in his principal’s lifetime, as a simple contract creditor until the principal’s death, and then as converted at once in a court of equity into a specialty creditor against the assets. We apply the principle only where the payment is after the principal’s death.
Row, in the case of Ex parte Crisp, 1 Atk. 135, lord Hardwicke has said, that where the surety pays off the debt, he is entitled to have an assignment of the security ; and so in Morgan v. Seymour, 1 Ch. Rep. 64, * [120,] the court is said to have decreed, that “the creditor should assign over *642 ‘"his bond to the sureties, to enable them to help themselves against the principal ■debtor.” In both these cases then, as I understand them, though the bonds were discharged at law, it was conceived to be within the power of a court of equity to revive them, and to give the surety the same remedy upon them that the creditor would have had : and this remedy it was always in the power of the court to enforce, by' in joining- the principal’ (when sued at law) from availing himself of the surety’s payment to bar the action. See 2 Call 136, 137. See also Bishop v. Church, 2 Ves. 373.
In the. cases just adverted to, it does not appear whether the payment was made in the principal’s lifetime, or after his death. If the latter, they are in point; if the former, they are a fortiori.
In the case of Butcher v. Churchill, 14 Ves. 575, the master of the rolls evidently proceeds upon the principle we contend for, that a surety paying or compromising a bond shall stand in the shoes of the creditor.
In The King v. Bennet, Wightwick’s Rep. 2-6, it was decided in the exchequer, that in the case of a crown debtor, a surety shall be substituted to the prerogative of the crown in regard to the debt, and then admitted to use the crown remedies. This seems to be identically the doctrine in our case of Enders &c. v. Brune, 4 Rand. 438.
In Robinson v. Wilson, 2 Madd. C. R. 569, 570, (american edi.) before the vicechancel-lor, the very point arose. And he there states, that he had examined the case of Gayner v. Royner, in the register’s book, which was a case in point to the relief asked. Hotham v. Stone, decided by sir William Grant at the rolls, was also cited to the same point; but it had been appealed from, and appears at that time to have been still undecided. The case of Robinson v. Wilson was therefore also laid over. *In this case, however, we have the evidence, by an examination of the register’s book, that sir Thomas Sewell had decided that where a surety pays off a specialty debt, he should be considered as a specialty creditor of the principal; and we also see that sir William Grant had decided the same point in Hotham v. Stone, and that the vicechancellor betrayed the same learning in Robinson v. Wilson.
In the case of Hodgson v. Shaw, 3 Mylne & Keene 183, sir C. Pepys, observing upon the case of Copis v. Middleton, says, “it was the first to introduce in terms any exception to the generality of the rule established by so many earlier cases, that a surety paying off his; principal’s debt is entitled, as against that principal, to all the remedies of which the creditor might have availed himself.”
The case of Parsons v. Briddock, 2 Vernon 608, which was recognized by sir William Grant in Wright v. Morley, 11 Ves. 12, and; had never been impugned, is justly considered by lord Brougham as really inconsistent. with Copis v. Middleton. And though his lordship, in approving the latter, must therefore have disapproved the former, yet it; would seem to have been still sustained" in later cases, if I do not misunderstand the note of judge Story as to the case of Dowbiggin v. Bourne, 1 Younge 111, 114, 115 ; S. C. 2 Younge & Coll. 462, 472, 473. The works are not in our library.
Cord Brougham himself admits (3 Mylne & Keene 183,) that “the way could not be said to have been prepared for Copis v. Middleton, by any former decision and this may indeed be truly said ; for Gammon v. Stone, 1 Ves. 339, and Woffington v. Shaw, 2 Ves. 569, were, I take it, both cases of payments by the surety in the lifetime of the debtor, and do not therefore decide the question as to such payment made after his death.
With all the cases before him which have been cited, it seems that his lordship was scarcely justified in adding *to the above remark, that “ there was no body of authority against it.” It is indeed remarkable that in the very case containing this review and approval of Copis v. Middleton, lord Brougham should have begun the work of paring it away by his decision. In that case (Hodgson v. Shaw, 3 Mylne & Keene 183), the surety had given his bond with a new surety for part of the debt, and had paid it off to the amount of £2937. leaving about ^400. due and unpaid. The surety was considered a specialty creditor as to what he had paid, although, if he had paid the whole, he would have been held to be but a simple contract creditor I* Cord Eldon had but little reason, I think, to congratu ate himself upon the support to his judgment, afforded by the decision in Hodgson v. Shaw ; for it is acknowledged by his learned successor, that he was unsupported by any former decision ; it is impliedly admitted that there *were authorities, though not a “ body of authority,” against it; and it is overruled upon grounds which, if consistent with it, would lead to the most glaring inconsistency in the administration of equity, and to injustice and absurdities revolting to the judicial mind.
*643 Having shewn, I think, that Copis v. Middleton is at variance with the principles of the roman law, which have been professedly engrafted into the practice of courts of equity in England, and having also shewn that it is unsupported by any, and at variance with many, of the english decisions, I proceed to the third and most important consideration, — thatit is in conflict withthewell settled analogies of the law, and strikes at the root of the only principle on which a very large and important head of equity depends.
In presenting a few very cursory hints on this subject, let me advert first to the principle on which Copis v. Middleton is decided. To use lord Brougham’s distinct enunciation of it, “ The surety may enforce any security against the debtor which the creditor has ; but by the supposition,” [the surety having paid off the bond] “there is no security to enforce, for the payment ” [by the surety] “ has extinguished it. He has a right to have all the securities transferred to him ; but there are, in the case supposed, none to transfer ; they are absolutely gone.” The whole of this reasoning, and that of lord Eldon himself, is truly said by judge Story “ to proceed upon the ground, that by the payment by the surety the original debt is extinguished.” It proceeds also upon the postulate, that as it is extinguished at law, equity has no power to revive it, and to sustain the surety in an action upon it for his benefit, by injoining the principal from un-righteously barring the just recovery of the surety, by a plea of payment, when that payment was made to the creditor by the surety himself. It must also deny to the court of equity the power to treat the principal, in that forum, as if the bond, ^though extinguished at law, were still a subsisting security in the contemplation of equity.
If this principle be denied; if, when a bond is extinguished at law, a court of equity has no power to treat the parties as if it were a still subsisting security, what will become of that class of cases, of which Bishop v. Church, 2 Ves. 100, 371; Primrose v. Bromley, 1 Atk. 89, and Simpson v. Vaughan, 2 Atk. 33, may be considered as leading decisions ? According to them, although, by the death of the principal in a joint obligation, the debt becomes extinct at law as to him, the bond is, under equitable circumstances, considered in equity a still subsisting security in behalf of the creditor, and is enforced not only against the personal estate of the principal, but also against his heirs, if they be named in the instrument. What becomes of the acknowledged right of a surety in a joint bond, (before our act as to joint obligations,) where the principal is dead, to go into equity for relief against his estate, on the ground that the money was lent to the deceased, and the plaintiff was only surety ? See Harrison ex’or of Minge v. Field’s ex’x, 2 Wash. 136 ; Chandler’s ex’x v. Neale’s ex’ors, 2 Hen. & Munf. 124; 5 Bac. Abr. Obligation, D. 4; Sale v. Dishman’s ex’ors, 3 Leigh 548. In Hoare v. Contencin, 1 Bro. C. C. 27, lord Thurlow, indeed, doubted the creditor’s right, in the case of a joint demand which was extinguished at law as to one of the parties by his death, to revive it against his representatives. But lord Eldon, though he speaks of his “ surprise that a court of equity should have interposed to enlarge the effect of a legal contract,” admits that “ the modern doctrine certainly is, that where a man has chosen to take the joint credit of several, though at law his security is wearing out as each of his debtors dies, yet it is fit that the creditor, whose debt remains at law only against the survivors, should resort to the assets of a deceased debtor; and a court of equity will, under ^'certain modifications, constitute that demand.” He then proceeds to state that it is a demand in equity only, and upon equitable principles. Ex parte Kendall, 17 Ves 525. Of these opinions was sir William Grant also, in Devaynes v. Noble, 1 Meriv. 546, 547. From these cases, then, it would seem unquestionable that equity can and will, where equitable principles require it, resuscitate the lifeless bond in favour of a creditor. It should do so, pari ratione, in favou of a surety; as where the survivor is the surety, and the deceased party was the principal who received all the monej .
Again, if the power of a court of equity to resuscitate an extinguished legal demand, or to treat the parties as if it still subsisted, be denied, what becomes of the whole doctrine of marshalling the assets of a decedent’s estate? By that doctrine, if a bond debt which binds the heirs is paid out of the personalty, and thereby extinguished at law, a simple contract creditor will have a right (if the personal assets are exhausted) to stand in the shoes of the bond creditors to the amount which he has received out of the personalty, and to charge it upon the realty. 1 Story’s Equity 529; 1 P. Wms. 679; Cox’s note 1. So in the case of the widow’s paraphernalia taken by bond creditors whose bonds bind the realty. Ram on Assets 353, 354. And even legatees, whose legacies are swept by the bond creditor, will have a right to stand in his shoes against the heir. 1 Story’s Equity 531, 2. On the other hand, if the heir is sued on a bond and pays the debt, whereby it is extinguished, he will be entitled to stand in the shoes of the creditor, and demand payment out of the personalty, as the natural fund for the payment of debts. 1 Story’s Equity 536. And lastly, a surety who pays off a bond will stand in the creditor’s shoes against the heir. Tinsley v. Oliver’s adm’r and heirs, 5 Munf. 419.
It would be needless to go into all the ramifications of this very com prehen-sive principle. It is obvious, *'from what has been said, that it rests upon the very power which is disavowed in Copis v. Middleton, and if that power be taken away, the whole .doctrine is in danger of tumbling in ruins.
I think then I have established the third position, that the case of Copis v. Middleton strikes at the root of an important principle, on which many doctrines of equity must rest, unless we are now prepared to sweep them away by this new and mischievous decision.
Eastly, I think the decision of lord Eldon will lead to the most flagrant absurdity in its application. This has already been seen in the remarks upon Hodgson v. Shaw. By that case it would seem, that if the bond is only in part discharged, the surety is to be *644 regarded as a specialty creditor as to what he has paid; but if he has paid off the whole, he is to be placed in the lower grade of simple contract.* Thus in the case at bar, if the sureties had not paid off the whole of Hartman’s bond, but only a part of it, they would have been held to be specialty creditors to the amount of the payment; but as they have in fact paid off the whole bond, they are to be taken to be simple contract creditors only ! No system of opinions can be true, which leads to such incongruous results. The truth is, that the decision of Copis v. Middleton jars with many of the most familiar principles of equity. Equity regards not form. Equity regards not what has been done, but what ought to have been done. Equity looks upon the debts due from a decedent as attaching upon the assets according to their dignity.† Equity will so far control legal proceedings, as to prevent a party from making an iniquitous defence at law. Equity will not permit the caprice of a creditor *to put a burden on the party who ought not to bear it; but will interfere even with the law, in putting it on the right shoulders. Equity will resuscitate a bond or other duty, extinguished at law, where equitable circumstances require it. These, and many more of the received axioms of the court, are violated by a decision which enables a party to fence himself behind a legal advantage, against the just claims of his adversary. I am therefore clearly of opinion, that we must on this occasion reject the decision of the learned lord, to whom we are all so much indebted for the improvements in the great structure of equity jurisprudence, which have resulted from the profound reflections of his very enlarged, sagacious, and discriminating mind.
In following the decisions of our own courts, I shall content myself with merely referring to them,‡ and with a reference particularly to the case of Watts &c. v. Kinney & ux., for my own views on the subject of substitution. With a view also to curtail this opinion, already too much extended, I ask leave to refer,for my own ideas of the difference in effect between the payment by the stcrety before and after the death of the principal, to what X have said elsewhere : 2 Tuck. Com. title Substitution, 1st edition, p. 485, 2d edition, p. 493.
With respect to the judgments of Conrad’s administratrix and Cars on, I think they ought to have been made to yield to the administrator’s right of retainer. The judgment against an administrator is not with us, as it is in England, conclusive of assets, where he has *failed to plead fully administered. He is not precluded, after such a judgment, from shewing that there are no assets, (1 Rev! Code, ch. 104, § 36, p. 384,) and in doing so, it is competent to him to retain for his own debt. The decree ought so to have provided; but as. the administrator de bonis non is not an appellant, and Conrad’s administratrix and Carson are not before the court, the error, if it be one, cannot be corrected.
I am of opinion to affirm the decree.
Decree affirmed.

There was a judgment on it against White’s first administrator Powell, hut that did not elevate it *641 above its original dignity as a specialty. Note by the president. — Note in Original Edition.

The reporter understands the case of Hodgson v. Shaw differently, and thus Two obligors having executed their joint and several bond for a debt, and one of them having died before any part of the money was paid, the survivor, being applied to by the creditor for payment, gave a new bond, with surety, for an amount something less than the whole debt. The surety having made payments amounting to £2937. in part discharge of the second bond, the creditor assigned the original bond to a trustee, upon trust, in the first place, to pay the assignor £430. the balance still remaining due to him ; and as to the residue, upon trust for the surety. It was held, that in the administration of the estate of the deceased obligor in the first bond, the surety was entitled to rank as a specialty creditor ; expressly upon the ground, that the payments being made on account of the second bond, the first, to which the surety was no party, still remained a subsisting security, capable of assignment for his benefit; whereas, in Copis v. Middleton, the only security for the debt was the bond in which the surety himself was an obligor, and which was held to have been extinguished by his payment of it. It seems, therefore, that the decision in Hodgson v. Shaw would have been the same, although the second bond had been given for the whole debt secured by the first, and although the surety had paid the whole. Indeed, the claim of the surety appears to be treated by the lord chancellor as if such were the real facts of the case. — Note in Original Edition.

See the note on page 327. (Reporter.) — Note in Original Edition.

Hence the sureties had a right, at the instant of the principal's death, to demand that the assets should be applied to pay the bond. To deprive them of this right would he a fraud upon them. (Note by thepresident.)-Note in Original Edition.

Eppes &c. v. Randolph, 2 Call 125, 188 ; Tinsley v. Anderson, 3 Call 329; Kinney’s ex’ors v. Harvey &c., 2 Leigh 70; watts &c. v. Kinney & wife, 3 Leigh 272; Enders &c. v. Brune, 4 Rand. 438, 447 ; Douglass v. Fagg, 8 Leigh 588 ; Tompkins v. Mitchell, 2 Rand. 428; M’Mahon &c. v. Faucett &c., 2 Rand. 514; Hatcher’s adm’rs v. Hatcher’s ex’ors, 1 Rand. 53; Lidderdale v. Robinson, 12 Wheat. 594 ; Tinsley v. Oliver’s adm’r &c., 5 Munf. 419. (Note by the president.) — Note in Original Edition.