Allen, J.
This is a bill filed by the appellant and George B. Keys, to be subrogated to the lien of a judgment obtained against them and Isaac G. Grant by James Cox, and which it appears has been paid by the appellant. The bill avers that the complainants and Isaac C. Grant having formed a partnership in the summer of 1839, for the purchase of cattle for market, on the 25th of July 1839 executed to James Cox their joint and several single bill for one thousand three hundred dollars, the price of cattle purchased from him. That all the cattle being sold by them, Grant thereafter was supplied with funds resulting from the sales to pay the debts of the firm, including the debt to Cox; that he agreed and bound himself to pay the debts, and that it was understood from that time that the other parties were to be bound only as the securities of Grant in relation to the debts. Grant having failed to discharge the debt, the creditor sued and obtained judgment against all the parties to the note; and execution having issued, the amount was paid by the appellant. The bill avers that the judgment on the note was recovered against Grant and the complainants at the spring term of the Circuit court for Washington county in the year 1840. That on the 19th of September 1840 Grant executed to Francis Smith, as trustee for the benefit of John B. and David C. Clark, a deed of trust covering all the land owned by him. That shortly afterwards it was ascertained he was in insolvent circumstances, and that he has since taken the oath of insolvency.
The allegation that Grant was supplied with the funds to pay the debt to Cox is not denied by Grant in his answer; and that fact and the agreement to pay the debts, are fully proved by evidence of his admissions and by his agreement of the 16th May 1840, filed as an exhibit in the cause. The recovery of the judgment at the time alleged in the bill is neither *172 admitted or denied in the answers, and the complain-an^s ^aye neglected to file a copy. That it was prior date to the deed of trust to F. Smith seems- not to ]iave foeen controverted in the court below, or in argument here: still the record should contain some evidence to show that it was recovered before the execution of the deed of trust. That proof, it seems to me, is 'furnished by the deposition of Chs. C. Gibson, the deputy sheriff1, who deposes that a few days after the May term 1840 of the Circuit court for Washington county, an execution for the debt was placed in his hands by the clerk of said county, upon which he took a forthcoming bond, dated the 22d of June 1840. This, it is true, is secondary evidence, but the deposition is not excepted to for that cause, though so much of it as details the statements of the complainants in their own favor, was excepted to.
Conceding the judgment to be prior in point of time to the deed of trust, it is contended that the debt was the individual debt of each of the partners; that in paying it the complainants have merely paid their own debt, and such payment gives them no right to the application of the principle of subrogation as against a subsequent incumbrancer. As between the partners and the creditor they were all equally bound; and no understanding and agreement as between themselves, could change that relation so as to impair his rights. But there was nothing in that relation which would prevent the parties as between themselves., from assuming the relation of principal and securities. Grant agreed to pay the debt upon being furnished with the means; the funds were supplied, but he failed to apply them as he agreed to do. He admitted that he owed the debt himself, and by the memorandum signed by him, dated the 16th of May 1840, he bound himself to settle the unpaid debts of the firm contracted for cattle during the year 1839, and the *173 costs incurred in collecting them. As between themselves, he stood in the position of principal primarily liable for the debt, and his copartners as his sureties. After they had complied with their engagement by supplying Grant with the funds to pay off the debts, upon his undertaking to discharge them, the debts became his, and they should have been discharged by him ; for in substance though not in form the money was due from him alone.o If the property had remained the property of Grant, there can bemo doubt that a court of equity, in view of his express undertaking to treat the debt as his own and discharge his copartners therefrom, would have held him liable as principal debtor, and substituted them, if compelled to pay his debt, to the lien of the creditor’s judgment on his property. And this equity of the complainants could not be impaired by a subsequent transaction of Grant with third persons, to which the complainants were strangers. Although the judgment is in fact extinguished by payment, yet it is kept alive in contemplation of equity for the benefit of the surety. Bank United States v. Winston’s ex’or, 2 Brock R. 254; Enders v. Brune, 4 Rand. 438; Powell v. White, 11 Leigh 309; McClung v. Beirne, 10 Leigh 394; Robinson v. Sherman, 2 Gratt. 178; Leake v. Ferguson, 2 Gratt. 419; Watts v. Kinney, 3 Leigh 272.
I do not think, therefore, that there is anything in the objection that the debt when contracted was a partnership debt, and that with respect to the creditor it retained its original character. As between themselves they occupied the relation of principal and securities; and the judgment being prior to the deed of trust, they are entitled to priority over it, unless the creditors secured by the deed can show a superior equity. This the defendants by their answers have attempted to make out. The deed of trust was given to secure a debt of one thousand six hundred and six *174 dollars to David C. Clark, and to secure D. C. Clark and John B. Clark, the securities of Grant in a note day executed to Smith, the trustee, for five hun¿re)j ¿0parS) with interest from the 1st of December 1837. Smith in his answer avers that this five hundred dollars was part of a sum of one thousand dollars obtained long before the date of the deed of trust, from the said Smith by the complainants and the said Grant, for which they gave their note, on which five hundred dollars had been paid; and that the one thousand dollar note, with the names of complainants thereto, was given up to Grant on his giving the Clarks and the deed of trust as security in the place of the complainants.
These allegations are not responsive to any of the charges in the bill, and are entirely unsupported by evidence. It is therefore unnecessary to consider what would be their effect on the rights of the parties if made out by proof.
The answers of Grant and David C. Clark attempt to show how the debt of one thousand six hundred and six dollars, secured by the deed of trust to David C. Clark, originated. The account given of the alleged purchase of the whole land by David C. Clark in 1838 at the price of two thousand five hundred dollars; the subsequent partnership with Grant at which the land was valued at two thousand dollars; and the subsequent arrangement by which the partnership was dissolved, and Grant became a debtor in the sum of one thousand six hundred and six dollars, is not very intelligible, and the documentary evidence filed does not throw much light on the transaction.
By the agreement of November 24th, 1838, Clark became the purchaser of the lands at two thousand five hundred dollars, and paid seven hundred and eighty-six dollars and seventeen cents towards the price on the 27th November 1838. On the 15th of *175 October 1839, an agreement was made between them, which recited that Grant had a tract of land on which he then lived, containing 700 acres, which he at two thousand dollars; and he agreed to let Clark have one-half at one thousand dollars, which he had paid. It does not appear what had become of the first sale of the whole to Clark at two thousand five hundred dollars. It is not alleged that there was an express rescission, but it is left to implication that the second agreement was understood to be a rescission: nor is any reason given why after a sale of the land at two thousand five hundred dollars and payment of part of the purchase money, it should be taken back and the purchaser permitted to take one-half of it at one thousand dollars. The receipts thereafter given tend to render the transaction still more obscure; for they purport to be given for money received in payment of Grant’s half of the land; though it does not appear that after the 15th of October 1839 there was any contract between them by which Grant sold to Clark the half of the land retained by him. Whatever may have been the nature of the dealings between these parties, there is nothing to show that they were of such a nature as to give Clark an equitable lien on the property. Under the most favorable aspect of the case for Clark, and regarding all the transactions as taking place fairly, there was no debt due to him until their final arrangement setting aside their previous contracts and converting his advances as a purchaser and partner into a debt secured by a deed of trust then executed upon the whole of the land: and it seems to me he cannot go behind his deed. Before that arrangement no debt was due to him. Ilis case is not as strong as that of the vendor to whom there is an actual debt due, for which he has an implied lien, as to whom it has been decided that when he takes a mortgage for the purchase money his implied equitable lien for the *176 purchase money is superseded. Tayloe v. Adams, Gilm. 329; Little, &c. v. Brown, 2 Leigh 353. I think the creditors have not shown anything which entitles them g0 behind the deed of trust; and the judgment being pi-ior in date, the appellant, who by substitution is entitled to the benefit of it, must be first satisfied. But as the judgment only authorized a charge upon a moiety of the land, a moiety only can be subjected to sale for his benefit.
It has been supposed that the case of the Mutual Assurance Society v. Stanard, 4 Munf. 539, decides that where, after a judgment, the debtor conveys the whole of his land, and the deed provides for the sale thereof, the judgment is a charge upon the whole proceeds, and must be first satisfied. In that case no such question seems to have been considered by the court. It may have been known that a moiety of the property would be sufficient to discharge the judgment; and therefore the point may not have been made. The main question in the cause was whether the judgment could relate to the first day of the term, so as to overreach intermediate incumbrances. Having decided that the trustees took in subordination to the judgment, it became necessary to determine what effect this would have upon the rights of the parties; and the court, without deciding the general question whether the court of chancery could in all cases decree a sale of the land out and out, at the instance of the judgment creditor, directed that as the deed in that case had provided for a sale for the purposes of the trust, the whole should be sold by the trustees, who should in the first place pay the judgment out of the proceeds, and then proceed to the execution of the trust. The question as to the power of a court of chancery in such cases to sell out and out was not free from difficulty, as will appear from the remarks of Green, judge, in Blow v. Maynard, 2 Leigh 29, 57; *177 and the case of the Mutual Assurance Society v. Stanard is an authority for the exercise of the power where a subsequent deed has been executed providing for the sale; but cannot be considered an authority for the other proposition, because it does not appear that it was necessary to decide it, or that it was considered.
It was decided in Haley v. Williams, 1 Leigh 140, that a judgment is a lien on the whole of the debtor’s equitable estate; and the whole fund and not a moiety is to be applied to the j udgment. In that case the legal title was in a trustee for the security of a debt having priority to the judgments. Green, judge, (whose opinion in this respect was concurred in by the other judges, as a decree was entered conforming to it,) stated that a court of equity, upon the principle that equity follows the law, would, if it were practicable, subject only a moiety; but that was impracticable ; as equity could only enable the creditor to reach the equity of redemption by allowing him to redeem ; which cannot be done with a proper regard to the rights of the mortgagee, without requiring him to redeem in toto, and not for a moiety only: And when redeemed, the judgment creditor has a right to stand in the shoes of the mortgagee, and to tack his judgment. The debtor could not ask to redeem without paying the judgment, as well as the mortgage debt, upon the principle that he who asks must do equity.
But where the legal estate is in the debtor at the date of the judgment, the creditor can only subject a moiety; and a subsequent alienation by the debtor cannot enlarge his rights. Even where the alienation is fraudulent, equity merely removes the fraudulent conveyance out of his way. Stileman v. Ashdown, 2 Atk. R. 477; Ibid. 607; McNew v. Smith, 5 Gratt. 84. And there would seem to be no good reason why a Iona fide *178 incumbrancer should be in a worse condition than a fraudulent alienee. In McClung v. Beirne, 10 Leigh 394, there had been successive alienations, and this court byits decree subjected an equity of redemption remaining in the debtor in a portion of the property, to be sold out and out, under the authority of Haley and Williams; and sales of the residue of the property were decreed to be made until a moiety was sold. It seems to me that this is all the complainants can claim by virtue of the judgment lien in the present case.
The bill averred that Grant at the time of the judgment was seized of the several tracts of land described in sundry conveyances, copies of which were filed: And furthermore, that the deed of trust covered all the land owned by Grant at the date of the judgment. By a comparison of the lands described in the copies of the deeds to Grant, with the tracts described in the deed of trust, it appears that some lands described in the deeds to Grant were not included in the deed of trust.
On the 25th October 1842, the cause came on to be heard by consent, and an interlocutory decree was entered directing a sale of the land in the bill mentioned. This I understand to be a consent of parties for the hearing of the causes at that time; but not a consent to the decree of sale: That was the decision of the court. At a subsequent day of the same term, it being suggested that there was another suit pending in favor of James Oox against Grant and others, in which the complainant Cox was attempting to subject the same land to sale, by consent of parties, the suits were amalgamated so far as to come on and be heard together. And by like consent, it was ordered that the decree for the sale of the land before recited, should be considered as having been pronounced in both cases. A sale was afterwards made, and there being no exception to the report, the same was con *179 firmed; and the court proceeded to pronounce upon the rights of the parties, and distribute the proceeds. In these proceedings there were errors not affected or cured by the consent of the parties. That consent merely cured any irregularities as to the time of bringing on the first cause for hearing, the amalgamating the two causes, and in making the decree as entered in the first case, a decree in both cases, without a formal entry in each case. The error, if any, in decreeing a sale as the cause then stood, was not cured. There should not have been a decree for a sale until the priorities of the parties were adjusted, and until it had been ascertained what portion of the lands appearing by copies of deeds filed with the bill to belong to the debtor were included in the deed of trust. The lands not so included should, according to the case of Me Clung v. Beirne, ubi supra, have been first sold and applied to the prior judgment; and if insufficient to pay it, then the lands embraced by the deed of trust should have been sold and so much of the proceeds thereof as would, with the proceeds of the lands not conveyed, amount to a moiety of the proceeds of all of said lands, should have been applied, if necessary, to the indemnity of the complainants. The record in the other suit, though heard with this case, is not before us. If as it would seem from the recitals in the decree, a judgment has been rendered for that claim, and it was entitled to priority over the deed of trust, it should have been satisfied out of the other moiety of the proceeds arising from a sale of the lands: And the residue should have gone to the benefit of the parties provided for in the trust deed. The decree gives the latter the proceeds of all the lands, whether embraced by the deed of trust or not, subject to the claim for the two hundred dollars. The lands seem to have been sold as one tract; and it cannot be ascertained from what appears in this record, what the *180 lands not embraced in the trust deed were worth. Thu sale was confirmed and a conveyance to the purdirected by the final decree; and as the appeal p^gg Up wp0ie 0f decree and suspended its executi°n, the claim of the purchaser must fall with the reversal of the decree, unless there was some reason to affirm it so far as it confirmed the sale and directed a conveyance. Nothing of that kind appears. On the contrary, the purchaser is the representative of the trustee in the deed of trust, who was the creditor in one of the debts provided for, and one of three assignees of the other debt. He does not occupy the position of a stranger to the controversy, who purchased at a judicial sale, but is the party chiefly benefited by the proceedings complained of. And as the appeal suspended the order confirming the sale and arrested its execution, the whole decree should be reversed and the sale set aside, and a resale directed, and an application of the proceeds made upon proper principles. I think the decree should be reversed.
The other judges concurred in the opinion of Allen, J,
The decree was as follows:
. The court is of opinion, that the complainants in the court below, who, with Isaac C. Grant, were parties to the single bill executed to James Cox on the 25th July 1839 for one thousand three hundred dollars, ought, as between themselves and said Isaac C. Grant, to be regarded as the securities of said Isaac C. Grant, who, as to them, had, for valuable consideration, assumed the relation of principal, and was primarily liable for said debt. That said Isaac C. Grant having failed to discharge his co-obligors from liability, and the creditor having sued and obtained judgment, the complainants or either of them who have been *181 compelled to pay said judgment, are entitled to be substituted to tbe lien of said judgment on tbe real estate of said Isaac C. Grant. That as said was prior in date to the deed of trust of the 19th day of September 1840 from said Isaac C. Grant to Francis Smith; and the parties claiming under said deed of trust having failed to establish in themselves any equity to charge said lands prior to said deed of trust, or to show any reason why the equity of the complainants in the court below to be substituted to the lien of the judgment, should be postponed until the debts secured by the trust deed should be satisfied, the complainants are entitled to priority of satisfaction for the sums paid by them or either of them in discharge of said judgment, to the extent of a inpiety of said land conveyed by the deed of trust, or the proceeds arising from the sale thereof, after applying to their satisfaction the proceeds arising from the. sale of the other lands of said Grant not included in said deed of trust. That as according to the principles of the case of McClung v. Beirne, 10 Leigh 394, the lands retained by the debtor and not aliened should be first subjected to the relief of the subsequent bona fide alienees and incumbrancers, the whole proceeds of the land not embraced in the deed of trust should be first applied to the indemnity of the complainants and each of them, for the amount paid by them or either of them in satisfaction of said judgment; and if not sufficient to indemnify them, and if the proceeds arising from the sale of such lands not included in said deed of trust, should not be equal to a moiety of all the lands of the debtor, then so much of the proceeds arising from the sale of the lands embraced in the deed of trust as will, when added to the proceeds of the other lands not so embraced, amount to a moiety of all the lands owned by the debtor, should be applied to the indemnity of the complainants or *182 either of them. That out of the other moiety of the proceeds arising from the sale.of lands of the debtor, debt of two hundred dollars recovered by James qox against said Grant with interest and costs, should be satisfied, if, as it would seem from the recital in the decree, a judgment has been recovered prior to the date of the deed of trust. But as the record in that case is not before this court, although the cases were heard together, no decision as to the rights of the parties as involved in that case, can be pronounced. The residue of the fund arising from a sale of all the lands as aforesaid after applying a moiety as aforesaid if required, to the indemnity of the complainants, and the other moiety thereof or so much as is required, to the payment of the two hundred dollars and interest and costs as aforesaid, provided it should appear that said last claim is entitled to priority to the deed of trust, is to be applied to the benefit of the parties named in the deed of trust according to the terms thereof.
The court is further of opinion, that there was error in proceeding to decree a sale of the lands before the priorities of the parties had been ascertained, and without an enquiry as to what lands owned by the debtor as described in the deeds, copies of which were made exhibits with the bill, were included in the deed of trust.
The court is therefore of opinion, that said decree is erroneous, and it is adjudged and ordered that the same be reversed with costs to the appellant; and the cause is remanded with instructions to set aside the sale heretofore made, to direct an enquiry by a commissioner to ascertain what portion of the land of the said Isaac C. Grant was not conveyed by the deed of trust; also an enquiry to ascertain how much of said judgment for said debt of one thousand three hundred dollars has been paid by the complainants, or either of *183 them, and to render a decree in favor of each of the complainants against said Isaac C. Grant for the amount so paid and interest. And if the same shall not be paid within a reasonable time, to be fixed by the court, then to decree said lands to be sold and the proceeds applied; and the cause proceeded in in order to a final decree, according to the principles of this opinion and decree.