Moncure, P.,
after stating the case, proceeded:
If Phelan and Collander had taken a deed of trust from Jones and Griswold on the billiard tables to secure the purchase money, and caused the deed to be recorded before the property was carried on the leased premises, the hen of the deed would have been good against the lessor’s claim for rent, and only the lessees’ interest in the property, to wit, the equity of redemption, would have been liable to distress. But the deed of trust to Coke to secure the debt .to Phelan & Col- *239 lander, was executed after the billiard tables had been carried on the premises, and while they were thereon; and therefore, at the time of the execution of the deed, the said property was liable to distress; but for not more than one year’s rent, whether accrued before or after the creation of the said lien. Code of 1860, p. 618, ch. 138, § 11. There was at that time only three months rent actually due, but still the property became liable to distress to the extent of one year’s rent. That liability existed, however, only for the security of the lessors to that extent; and if, when they sued out their distress warrant, there was unencumbered property of the lessees- on. the leased premises, that property ought to have been distrained and subjected to the payment of the rent due, before the property conveyed by the said deed of trust; which latter property ought to have been subjected to the payment only of the balance of the rent remaining unpaid after applying to the payment thereof the net proceeds of the sale of the unencumbered property.
This would undoubtedly have been the case had no subsequent deed of trust been executed by the lessees on the property on the leased premises not included in the first deed of trust. If no such subsequent deed had been executed, and if, by an agreement between the lessors, lessees and creditors secured by the first deed, all the property on the leased premises, as well that included in the first deed as that not so included, had been sold for the purpose of having the proceeds of sale distributed among the parties according to their respective rights; could there be any doubt as to the manner in which the distribution would be made ? Is it not clear that the proceeds of the property not included in the deed of trust would first be applied to the payment of the rent due to the lessors, and that the proceeds of the property included in that deed would only be applied to the payment of any rent *240 which, might remain unpaid after applying the proceeds of the other property as aforesaid? I presume - there can be no controversy on this subject. The lessees owe the rent to the lessors, who have a lien (by their right of distres) for its security, on all the property on the leased premises. But the lessees owe another debt, for the security of which they have executed a deed of trust on a part of the said property, leaving the other part unencumbered by the deed. Are not the lessors bound to resort, for the payment of the rent due to them, first to that part of the property on which they have a lien which is not included in the deed of trust, before they can resort to that part which is so included? To state the ease is to answer the question. Hone of the rights or remedies of the lessors can be taken away or impaired; but they must be so used as not to injure the rights of others.
Such would be the state of the case if the second deed of trust had not been executed; that is, the deed to Guigon to secure a debt alleged to be due by the lessees to Thomas M. Jones. How does that deed affect the case? Does it impair those rights to which we have seen the creditors claiming under the first deed would clearly have been entitled if the second deed had not been executed?
'When the second deed was executed, the lessors had a lien for the rent due them, on all the property on the leased premises, and Phelan & Collander had an inferior lien, by deed of trust, on a part of that property, which deed of trust was duly recorded. These trust-creditors had a right, as between themselves and the lessors and lessees, to require that the property on the leased premises, and not included in the deed of trust, should be applied to the payment of the rent due to the lessors, before the property included in the deed should be resorted to for that purpose. The second deed of trust was obtained by Thomas M. Jones, the *241 creditor thereby secured, with knowledge, actual' or constructive, of the existence of the first deed, and of the rights of the creditors thereby secured; the second deed embracing, not only the property included in the first deed, but also the property on the leased premises, not included in that deed. How, then, can the creditors, claiming under the second deed, stand on any higher ground, in regard to the rights of the creditors claiming under the first, than the lessees themselves, from whom he was a purchaser, with notice of those rights, and in whose seat alone he can sit ? That he cannot stand on higher ground than they, in regard to those rights, is clear, both upon principle and authority ; and is well established by the decisions of this court. See Conrad v. Harrison, &c., 3 Leigh 532; McClung v. Beirne, 10 Id. 394; and cases therein cited, especially the cases of Gill v. Lyon, 1 John. Ch. R. 447; Clowes v. Dickenson, 5 Id. 235; and Nailer v. Stanley, 10 Serg. & R. 450. In Beverley v. Brooke, 2 Leigh 425, it was held, that “ all the alienees of the lands of a "debtor bound by a judgment or recognizance, no matter in what order the alienations were made, are bound to bear equally the burden of satisfying the judgment, by mutual contributions, pro rata, according to the value of the property held by them; all being considered as in cequali jure, without regard to the priority of their purchases or conveyances.” It is remarkable that in that case the decisions of Chancellor Kent, in the cases above cited from 1 and 5 John. Ch. R. were not referred to by the counsel who argued, or the court which decided the case; though Mr. Johnson, one of the counsel, urged in argument the same general reasoning on which those decisions are founded. Judge Carr, one of the three judges who decided that case, afterwards changed his views, and expressed a contrary opinion in Conrad v. Harrison. And in McClung v. Beirne, a contrary decision was made to *242 that of Beverley v. Brooke; the majority, who decided McClung v. Beirne, being of opinion that, after the ■ change of the .views of Judge Carr, Beverley v. Brooke should he regarded as the decision of only two judges, and, therefore, not as a binding authority. But McGlung v. Beirne was, itself, a decision of only two judges. So that that case only balanced the case of Beverley v. Brooke, and left the law on the precise question involved in those two cases in an unsettled state. In the later cases decided by this court on the subject, McClung v. Beirne has been followed, and Beverley v. Brooke has been considered as overruled. Rodgers v. McCluer’s Adm’r, &c., 4 Gratt. 81; Henkle’s Ex’x, &c. v. Allstadt, &c., Id. 284; Alley, &c. v. Rogers, 19 Gratt. 366. The case of Beverley v. Brooke was the case of a judgment, and the decision was founded upon the peculiar nature of that lien. Conrad v. Harrison was the case of a mortgage, and was distinguished on that ground by two of the judges, who decided it from the case of Beverley v. Brooke.
But all the judges who sat in Conrad v. Harrison concurred in the decision of that case, and its authority has never been doubted. It plainly applies to the case now under consideration, which is not the ease of a judgment lien, but that of a lessor’s lien for rent, which stands on the same principle with the lien of a mortgage in regard to the subject of the present enquiry. I therefore think that Conrad v. Harrison is conclusive of this case, and that, upon the principles declared in that case, the appellees, Phelan & Collander, are entitled to the entire fund in controversy in this case.
It can make no difference that the distress warrant of the lessors in this ease was levied on the properly conveyed by the first deed of trust, instead of the property not conveyed by the first but conveyed by the second deed of trust. The lessors could not, in that way, defeat or impair the right of the creditors secured *243 by the first deed, who may obtain by subrogation what -they might have obtained by marshaling the securities,
It was contended by one of the counsel of the appellants, that the doctrine which was applied in Conrad v. Harrison, and is sought to be applied in this case, is not applicable to personal, but only to real estate. I think it is applicable as well to personal as to real estate. The same reason exists for its application to ■each, and I have never before heard a question raised as to its being applicable alike to both. Of course the doctrine of Beverley v. Brooke could have been applicable only to real estate, because a judgment is a lien ■only on real estate.
Since writing the above, I have been reminded by my brother Staples of the case of Enders, &c. v. Brune, 4 Rand. 438; and referred by him to the case of Slade v. Van Vechter, 11 Paige R. 21, as being not only cases of the application of the doctrine of Conrad v. Harrison to personal estate, but also eases strongly sustaining the decision of the court below in this case. I have also examined the case of ex parte Stephenson, De Gex’s Bankruptcy Cases 586, referred to in the brief of the counsel for the appellees (to which case I had not access when I prepared the foregoing opinion), and I find it to be, as maintained by that counsel, singularly applicable to the present case. The subj ect in that case 'also was personal estate.
I am of opinion that there is no error in the decree ■of the Circuit court, and that it ought to be affirmed.
The other judges concurred in the opinion of the Bresident.
Decree affirmed.